COLUMBUS BAR ASSOCIATION *v.* FINNERAN.

[Cite as *Columbus Bar Assn. v. Finneran* (1997), ___ Ohio St.3d ___.]

*Attorneys at law — Misconduct — Indefinite suspension — Consistent patterns of*

*incompetence, dilatory tactics, flagrant failure to respond to discovery*

*demands, and repeated dismissal and refiling of cases.*

(No. 97-873 — Submitted September 23, 1997 — Decided December 31,

1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 96-47.

On April 17, 1996, relator, Columbus Bar Association, filed a complaint

charging respondent, Russell D. Finneran of Columbus, Ohio, Attorney

Registration No. 0028202, with a consistent pattern of incompetence, dilatory

tactics, flagrant failure to respond to discovery demands, and repeated dismissal

and refiling of cases. Relator's complaint detailed eleven specific examples of

respondent's actions. After respondent sought and received an extension of time,

he failed to plead or answer. Relator then filed a motion for default supported by

affidavits from then-Common Pleas Judge Evelyn Lundberg Stratton and Common

Pleas Judge Nodine Miller, regarding respondent's pattern of dismissing and

refiling the same case after ignoring dates for discovery, violating court orders,

and employing tactics to delay. The motion was further supported by affidavits

from attorneys Bruce A. Campbell and E. Joel Wesp, regarding relator's

unsuccessful attempts to obtain the cooperation of respondent in the investigation.

A panel of the Board of Commissioners on Grievances and Discipline of the

Supreme Court ("board") found that respondent filed a personal injury action for

Ruth Brown in 1989 which he voluntarily dismissed under Civ.R. 41 just prior to a

dismissal for failure to respond to discovery. Respondent refiled the Brown case

in 1992 and again dismissed it under Civ.R. 41 under the same circumstances. Respondent filed the Brown case again in 1994, and after he failed to prosecute the matter or attend depositions, the court dismissed the case with prejudice. The panel found a similar pattern in respondent's representation of Cornelia Hancock for whom he filed a case in 1989, which he later dismissed and refiled in 1991, in 1992, and in 1994, each time to avoid dismissal for failure to provide discovery. The fifth filing of the Cornelia Hancock case was dismissed with prejudice. In representing Helen Hancock respondent followed the same pattern, and the fourth filing of Helen Hancock's case was dismissed with prejudice, a dismissal which was affirmed on appeal. *Hancock v. Kroger Co.* (1995), 103 Ohio App.3d 266, 659 N.E.2d 336. Similarly, after respondent refiled a case for John S. Stover for the third time in 1994, the trial court granted defendant's motion for summary judgment, as the complaint had not been filed within the statute of limitations. The decision was affirmed on appeal. *Stover v. Wallace* (Feb. 15, 1996), Franklin App. No. 95APE06-743, unreported, 1996 WL 70991. In 1989, respondent voluntarily dismissed a personal injury case which he had filed in 1986 on behalf of Kathleen and James Logsdon, refiled in 1990, and again voluntarily dismissed it in 1991. The Logsdon complaint was dismissed with prejudice in 1994 after the third filing. That dismissal was affirmed by the court of appeals and affirmed by this court in 1995. *Logsdon v. Nichols* (1995), 72 Ohio St.3d 124, 647 N.E.2d 1361.

The panel found that in six other instances, respondent filed, voluntarily dismissed, and then refiled cases: one was filed twice, four were filed three times, and one was filed five times. The panel found that these "serial filings" exhibited a pattern of incompetence, dilatory tactics, and repeated and flagrant failure to

2

respond to discovery demands, which placed an unnecessary burden on the judicial system.

The panel also found that respondent failed to cooperate in relator's attempts to investigate these matters.

The panel concluded that respondent had violated DR 1-102(A)(4) (engaging in conduct involving deceit and misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct adversely reflecting on the fitness to practice law), 6-101(A)(1) (handling a matter that the attorney is not qualified to handle), 6-101(A)(2) (handling a matter without adequate preparation), 6-101(A)(3) (neglecting a legal matter), 7-101(A)(1) (failing to seek the lawful objectives of a client), 7-101(A)(2) (failing to carry out a contract of employment), 7-101(A)(3) (prejudicing or damaging a client), 7-102(A)(1) (taking an action merely to harass or injure another), 7-102(A)(8) (engaging in conduct contrary to a Disciplinary Rule), 7-106(C)(7) (intentionally and habitually violating a rule of procedure), and Gov.Bar R. V(4)(G) (failure to cooperate in an investigation). The panel found no mitigating circumstances and recommended that the respondent be indefinitely suspended from the practice of law. The board adopted the findings, conclusions, and recommendation of the panel.

_____

*E. Joel Wesp, Melodee Kornacker, John W. Waddy*, *Jr*. and *Bruce A. Campbell,* for relator.

*Russell D. Finneran, pro se.*

_____

**Per Curiam**. Attorneys must use the tools of our legal system as they were intended. Our Ethical Considerations expressed in EC 7-1 state that "[t]he duty of

3

a lawyer, both to his client and to the legal system, is to represent his client zealously *within the bounds of the law*." (Emphasis added.) Therefore, while the advocate has a duty to use legal procedure to benefit the client's cause, the advocate also has a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. We conclude from the facts in this case that respondent has abused the tools of the system to the detriment of both his clients and our system of justice.

Despite consistent rulings to the contrary in the trial and appellate courts, respondent persisted in acting on his unique view that the savings clause of R.C. 2305.19 might be employed in conjunction with Civ.R. 41 to allow a case to be refiled an indefinite number of times. As a result, several of respondent's clients lost their causes of action. DR 6-101(A)(1) requires that a lawyer not undertake a matter that he is not qualified to handle, and DR 6-101(A)(2) requires that a lawyer not handle a matter without adequate preparation. Here, respondent either was not qualified to handle those cases or handled them without adequate preparation. Further, we conclude that respondent failed to seek his clients' lawful objectives in violation of DR 7-101(A)(1), failed to carry out his contracts of employment in violation of DR 7-101(A)(2), and intentionally prejudiced or damaged his clients in violation of DR 7-101(A)(3). Thus, respondent used the tools of his profession to the detriment of his clients.

DR 1-102(A)(5) states that a lawyer shall not "[e]ngage in conduct that is prejudicial to the administration of justice." Fair competition in the adversary system presumes, among other things, that attorneys will not employ obstructive tactics in the discovery procedure.

The transcripts of hearings in the various cases before the common pleas court attached to the motion for default make clear that respondent repeatedly

4

failed to respond to the discovery requests of his opponents. When a case for which respondent was responsible was about to be dismissed for failure to respond to discovery requests, respondent's practice was to voluntarily dismiss the case under Civ.R. 41 and then refile the same action within a year. Respondent would repeat this process several times for each matter. When asked at a hearing in common pleas court why he did not respond to discovery, respondent provided rambling answers about the magnitude of his caseload, the difficulty he had in contacting clients, the fact that his paralegal had been "hired away" or injured, and, significantly, the small amount offered by the defendant to settle the case. Thus it appears that after respondent filed a case, he would undertake no further action until confronted by the possibility of dismissal with prejudice for failure to respond to the defendant's discovery requests. Then respondent would keep the cause of action alive by the stratagem of voluntary dismissal and serial refiling, all in the hopes of obtaining an acceptable settlement offer. In short, respondent consistently employed tactics of evasion and delay, a strategy out of keeping with the purpose and intent of our system of orderly procedures.

We conclude that the tactics employed by respondent to circumvent discovery, in several instances for more than five years, were prejudicial to the administration of justice and a violation of DR 1-102(A)(5).

One of the goals of our legal system is the prompt resolution of disputes. Our Civil Rules are designed to achieve this result. Civ.R. 1(B) states that "[t]hese rules shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Civ.R. 11 states, "The signature of an attorney * * * constitutes a certificate * * * that * * * [the document] is not interposed for delay."

5

DR 7-102(A)(1) provides that a lawyer shall not "conduct a defense, delay a trial, or take other action on behalf of his client * * * when it is obvious that such action would serve merely to harass or maliciously injure another." Dilatory practices bring the administration of justice into disrepute. As the American Bar Association stated in its Comment to Rule 3.2 of its Model Rules of Professional Conduct, "Delay should not be indulged merely for the convenience of the advocates, or for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose." ABA/BNA Lawyers' Manual on Professional Conduct (1990), at 01:147. Engaging, as respondent did, in a procedure or tactic that had no substantial purpose other than delay constituted representation outside the bounds of the spirit and intent of our law. We conclude that the tactic of delay employed by respondent violated DR 7-102(A)(1).

Moreover, respondent failed to respond to the complaint before this court. Neither in his brief nor in his oral presentation did respondent address either his failure to answer relator's complaint or his failure to respond to relator's motion for default. Instead, in replying to our order to show cause why the recommendation of the board should not be confirmed by the court, respondent filed a response and objections, a brief in support, and a motion requesting remand. To that document respondent attached five exhibits. In oral argument before this court, respondent also sought to explain his actions in the various cases with new material. As we said in *Columbus Bar Assn. v. Sterner* (1996), 77 Ohio St.3d 164, 167-168, 672 N.E.2d 633-635, "Rule V of the Rules for the Government of the Bar of Ohio, setting forth detailed procedures for [disciplinary] matters * * * has no provision for the introduction of evidence in the brief filed in this court or in the oral argument to this court."

We hereby indefinitely suspend respondent from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and HARSHA, JJ., concur.

F.E. SWEENEY, J., dissents and would suspend respondent for one year.

WILLIAM H. HARSHA III, J., of the Fourth Appellate District, sitting for LUNDBERG STRATTON, J.