DISCIPLINARY COUNSEL *v.* WATTERSON.

[Cite as *Disciplinary Counsel v. Watterson,*
114 Ohio St.3d 159, 2007-Ohio-3615.]

(No. 2006–1198—Submitted October 3, 2006—Decided July 18, 2007.)

**Per Curiam.**

{¶ 1} This court admitted respondent, Tim M. Watterson of Canton, Ohio, Attorney Registration No. 0028264, to the practice of law in Ohio in 1982. On September 22, 2004, we suspended respondent's license to practice for one year, with six months stayed on conditions, for neglecting a client's case and charging clearly excessive legal fees. *Stark Cty. Bar Assn. v. Watterson,* 103 Ohio St.3d 322, 2004-Ohio-4776, 815 N.E.2d 386. In that case, we found that respondent "persistently missed deadlines and otherwise obstructed the process in order to defend against the disciplinary charges" and that he "unjustifiably and repeatedly accused various participants in the process of some impropriety." Id. at ¶ 42. On December 2, 2005, we suspended respondent's license to practice for failing to register. *In re Attorney Registration Suspension,* 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671. Respondent has not applied for reinstatement to the practice of law.

{¶ 2} On October 10, 2005, relator, Disciplinary Counsel, charged that respondent had committed professional misconduct by failing to cooperate in the investigations of two grievances filed against him and by engaging in actions designed to thwart the disciplinary process. Relator served respondent with the complaint, but despite being granted two extensions, respondent did not submit a timely answer. Relator filed a motion for default judgment under Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of fact and

conclusions of law and recommending that respondent be indefinitely suspended from the practice of law. The board adopted the master commissioner's findings of fact and conclusions of law, except that it found no violation of DR 4–101(B)(1) (barring unauthorized disclosure of a client confidence or secret). The board approved the master commissioner's recommended sanction and further recommended that the costs of the proceeding be taxed to respondent.

## Misconduct

{¶ 3} We now consider the evidence presented in support of relator's complaint.

### Count I—The Gunn Grievance

{¶ 4} Beginning in 2002, respondent represented Robert and Johnna Gunn in a bankruptcy matter. The Gunns later discharged respondent and hired a new attorney.

{¶ 5} In March 2005, the Gunns submitted a grievance against respondent to the Stark County Bar Association's Certified Grievance Committee. The Gunns complained about the fees charged as well as the timeliness and the quality of respondent's work. The grievance committee asked respondent to respond to the Gunns' grievance, but he did not. Respondent did, however, send a letter to the chairperson of the committee in which he asserted that "[f]ees in bankruptcy cases are within the sole jurisdiction of the Federal Bankruptcy Court."

{¶ 6} In May 2005, respondent filed two substantially similar motions for approval of attorney fees in the Gunns' bankruptcy case. In his motions, which respondent did not provide to the grievance committee, he included false statements and disclosed privileged attorney-client communications. For example, respondent's motions included the following language:

{¶ 7} "Mrs. Gunn has a pattern of being a very difficult client. Upon learning that the Chapter 13 Trustee would not lower the monthly payment, she began screaming while Counsel was explaining this to Mr. Gunn on the phone. She tried to blame Counsel for the first Plan not being approved, until Counsel reminded her of the substantial changes made, including to her income. Her husband told Counsel that Counsel should have changed the numbers they gave him, in order to make the Plan work. * * *

{¶ 8} " * * *

{¶ 9} " * * * Counsel cannot obtain a fair and accurate evaluation of this matter through the Stark County Grievance Committee. This committee, through two lawyers in particular, has a history of filing fraudulent charges against Counsel, filing fraudulent documents, stealing his attorney fees, and stealing his bank records. (Moeller and Greene cases) These lawyers have also

engaged in the malicious, retaliatory theft of Counsel's law license, reputation, and the destruction of his life and business."

{¶ 10} The bankruptcy court approved the previously paid fee of $1,250 for respondent.

{¶ 11} The board found that respondent's actions violated DR 1–102(A)(4) (barring conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice), 1–102(A)(6) (baring conduct adversely reflecting on the lawyer's fitness to practice law), and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in the investigation of professional misconduct).

### Count II—The Grant Grievance

{¶ 12} In November 2003, respondent filed a bankruptcy petition on behalf of Gary L. Grant and Angela J. Grant.  On April 7, 2005, after the Grants were granted a discharge in bankruptcy, Angela Grant submitted a grievance against respondent to the Stark County Bar Association's Certified Grievance Committee.  Grant claimed that in completing their bankruptcy, she and her husband believed that they had reaffirmed the debt related to their home mortgage, but this did not occur because respondent filed the paperwork too late.  Grant contended that respondent had made her and her husband's credit worse than it had been before their bankruptcy and that when the Grants attempted to contact respondent about their concerns, he did not return any of their telephone calls.

{¶ 13} The grievance committee requested that respondent answer Grant's grievance, but he did not respond.  Instead, he telephoned Grant and criticized her for filing the grievance.  The committee investigator then requested that respondent "refrain from any further conduct" with Grant or anyone in her family.  The investigator also reminded respondent that he had not responded to the previous request for the response to the grievance.

{¶ 14} In June 2005, despite the investigator's instructions, respondent sent a letter to Angela Grant that contained false statements concerning the bar association and the grievance process and threats directed toward Grant if she did not withdraw her grievance.  In his letter, respondent stated:

{¶ 15} "I am * * * demanding that you correct the fraudulent, dishonest allegations you have made, immediately, and in writing.  If you do not do so, I will take any available legal action against you for damaging my reputation and causing me this work.

{¶ 16} " * * *

{¶ 17} "[T]he Stark County Grievance Committee has a policy and practice of filing dishonest and fraudulent complaints from grievances, and failing to immediately dismiss fraudulent, unwarranted grievances.

{¶ 18} "The dishonest lawyers who handled my case have shown that they do not handle grievances honestly or fairly. These lawyers have a history of filing dishonest, fraudulent charges, stealing attorney fees, stealing bank records, as well as doing other dishonest things. My reputation has already been dishonestly and maliciously smeared and severely damaged in the legal community and the community at large as it is, and I will not accept any more of this."

{¶ 19} Respondent also stated that his "suspension from the practice of law is not only unwarranted, but it is a theft of [his] law license, supported by a dishonest and fraudulent opinion, written purely in retaliation."

{¶ 20} The board found that respondent's actions violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), and 8–102(B) (barring a lawyer from knowingly making a false accusation against a judge or other adjudicatory officer) and Gov.Bar R. IV(2) (requiring a lawyer to maintain a respectful attitude toward courts), and V(4)(G).

### Count III—Stark County Bar Association Grievance Committee

{¶ 21} In July 2005, the bar counsel for the grievance committee sent a letter to respondent indicating that the bar association had found probable cause to believe that respondent had violated the Code of Professional Responsibility and the Rules for the Government of the Bar and included a draft of the complaint. Respondent sent a letter in response that contained threats and false allegations against the bar association and its counsel:

{¶ 22} "You have no basis to file a complaint in this matter, as you did not in the last case, and I will respond in detail in this regard. Of course, you also had no right to handle the last case, steal my bank records, steal my attorney fees, steal my money, prepare and file fraudulent documents, lie repeatedly, talk ex-parte with the Chair in scheming and plotting against me in retaliation, or to destroy my business and life. It is time for you to pay very severely for all of these things. Also, I want you to return all the copies of my bank records (6–8 1/2 years of them) that you thieves and liars stole, and I want you to do this immediately. If you do not, you will pay very severely for not returning the 6–8 1/2 years of my personal bank records that you thieves and liars stole in violation of a Court order and the repeated directives by my lawyer to not touch these personal bank records. By the way, you will not be handling any case you file, as you will be a material witness on the issue of cooperation and why I cannot obtain a fair review of this matter from the Stark County Grievance Committee. Again, it is time for you thieves, liars, and evildoers to pay very severely for all that you have done."

{¶ 23} The bar counsel responded to this letter by withdrawing from the matter and transferring it to relator. He also returned to respondent IOLTA

records that had been obtained by the bar association by a subpoena issued in respondent's previous disciplinary case.

{¶ 24} On September 7, 2005, relator notified respondent of its intent to file a formal complaint against him and of his opportunity to provide a response before the filing of the complaint. Respondent acknowledged his refusal to respond to the grievance committee and threatened relator.

{¶ 25} The board found that respondent's actions violated DR 1–102(A)(4), 1–102(A)(5), and 1–102(A)(6).

## Review

{¶ 26} We have reviewed the board's report and the record, and we conclude that respondent committed the professional misconduct as described above. In so holding, we reject respondent's objections, which are not supported by evidence or legal precedent.

{¶ 27} Respondent has not established any justification for failing to cooperate in the disciplinary process. There is no credible evidence that he could not have obtained a fair evaluation of the Gunn and Grant grievances against him from the Stark County Bar Association's Certified Grievance Committee. Nor did respondent's belief that the bankruptcy court had exclusive jurisdiction over disputed-fee matters justify his refusal to cooperate in the disciplinary process. "[T]he Supreme Court of Ohio has exclusive original jurisdiction over the '[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law.'" *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 35, quoting Section 2(B)(1)(g), Article IV, Ohio Constitution. And no excuse exists for respondent's repeated threats against his clients, the grievance committee, and relator. Insofar as respondent attempts to "incorporate[ ] by reference" his "upcoming Federal complaint," we need not consider this material. See *Columbus Bar Assn. v. Finneran* (1997), 80 Ohio St.3d 428, 432, 687 N.E.2d 405 (the disciplinary process does not contemplate the introduction of evidence in briefs or oral argument).

## Sanction

{¶ 28} In imposing a sanction for attorney misconduct, we consider the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The aggravating factors present here include prior disciplinary offenses, a pattern of misconduct consistent with his earlier misconduct, multiple offenses, a lack of cooperation in the disciplinary process, and a refusal to acknowledge the wrongful nature

of the conduct. BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (e), and (g). There are no mitigating factors present.

{¶ 29} In determining the appropriate sanction, we note that respondent violated duties to the public, DR 1–102(A)(4) and (5), the legal system, DR 1–102(A)(6) and 8–102(B), and the legal profession, Gov.Bar R. IV(2) and V(4)(G). See, e.g., *Disciplinary Counsel v. Shramek*, 98 Ohio St.3d 441, 2003-Ohio-1636, 786 N.E.2d 869, ¶ 9.

{¶ 30} Respondent's misconduct, including his intentional disregard of and open contempt for the disciplinary process, demonstrates his present unfitness to practice law. To protect clients and the public, to ensure the orderly administration of justice, and to maintain the integrity of the legal profession, we agree with the board that an indefinite suspension is warranted. Accordingly, respondent is indefinitely suspended from the practice of law in Ohio. Although respondent has indicated that he will "never" accept the discipline imposed against him in order to reapply for his law license, we further order that should he apply for reinstatement, respondent must comply with the requirements in Gov.Bar R. V(10), including the requirement that he state in his petition for reinstatement the facts upon which he relies "to establish by clear and convincing evidence that he * * * possesses all the mental, educational, and moral qualifications that were required of an applicant for admission to the practice of law in Ohio at the time of his * * * original admission and that he * * * is now a proper person to be readmitted to the practice of law in Ohio, notwithstanding the previous disciplinary action." Gov.Bar R. V(10)(C)(5). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., FAIN, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., not participating.

MIKE FAIN, J., of the Second Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———————

Jonathan E. Coughlan, Disciplinary Counsel, and Lori J. Brown, First Assistant Disciplinary Counsel, for relator.

Tim M. Watterson, pro se.