**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Bahan*, **Slip Opinion No. 2022-Ohio-1210.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1210

COLUMBUS BAR ASSOCIATION *v*. BAHAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Bahan*, Slip Opinion No. 2022-Ohio-1210.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Violation of the Rules for the Government of the Bar—Conditionally stayed six-month suspension.*

(No. 2021-0224—Submitted June 15, 2021—Decided April 14, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-065.

_____

**O'CONNOR, C.J.**

{¶ 1} Respondent, Natalie J. Bahan, of West Mansfield, Ohio, Attorney Registration No. 0079304, was admitted to the practice of law in Ohio in 2005. On February 12, 2020, we publicly reprimanded her for violating Prof.Cond.R. 7.3(a) (a lawyer shall not, by in-person, live-telephone, or real-time electronic contact, solicit professional employment when a significant motive for the lawyer's doing

so is the lawyer's pecuniary gain). *Columbus Bar Assn. v. Bahan*, 159 Ohio St.3d 479, 2020-Ohio-434, 152 N.E.3d 189 ("*Bahan I*").

{¶ 2} In a four-count complaint filed in December 2019, relator, Columbus Bar Association, charged Bahan with four counts of professional misconduct arising from (1) her loud, profane, and alcohol-fueled outburst that she had directed at a former judge during a presentation at the 2018 Logan County Bar Association holiday event (Count One), (2) seven other incidents related to her alleged alcohol use (Count Two), (3) failing to diligently represent a client (Count Three), and (4) failing to cooperate in a disciplinary investigation and allowing her attorney registration to lapse (Count Four).

{¶ 3} A three-member panel of the Board of Professional Conduct conducted a hearing and heard testimony from Bahan and 14 other witnesses. At the conclusion of the evidence, relator withdrew Count Three. After the hearing, the panel unanimously accepted that withdrawal and also dismissed the charges alleged in Count Four.

{¶ 4} The panel issued a report finding that Bahan's alcohol-related conduct violated two rules governing the ethical conduct of lawyers, unanimously dismissed two alleged charges (one from Count One and one from Count Two), alleging violations of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and recommended that we impose a conditionally stayed, six-month suspension for Bahan's misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 5} Bahan raises five objections to the board's findings and recommended sanction. Her primary argument is that her conduct at the bar association's holiday event is constitutionally protected speech that may not be sanctioned under Gov.Bar R. IV(2).

2

{¶ 6} With one exception, we overrule Bahan's objections and adopt the board's findings of misconduct. We also adopt the board's recommendation that Bahan be suspended for six months with the entire suspension stayed on the condition that she engage in no further misconduct—with the additional condition that she submit to a substance-use assessment conducted by the Ohio Lawyers Assistance Program ("OLAP") and comply with all recommendations arising from that assessment.

**Bahan's Alcohol-Related Misconduct**

*Count One: Failure to maintain a respectful attitude toward the courts*

{¶ 7} Bahan and her husband attended the annual Logan County Bar Association holiday event on December 8, 2018. During the event, the bar association presented a "mock award" to William Goslee, who at that time was a judge on the Logan County Court of Common Pleas. Bahan, who had consumed alcohol at the event and appeared to be intoxicated, loudly and rudely interrupted the presentation of the award and called Judge Goslee a "piece of shit," an "asshole," and a "motherfucker."

{¶ 8} The board found that Bahan was displeased with Judge Goslee because he was involved with filing the grievance that had resulted in relator's decision to file the disciplinary complaint against her in *Bahan I*, 159 Ohio St.3d 479, 2020-Ohio-434, 152 N.E.3d 189. At the time of the bar event, *Bahan I* was pending before the board, and the hearing was scheduled for two days after the bar event.

{¶ 9} The board found that Bahan's "loud, profane, and drunken conduct," which was directed at Judge Goslee, violated Gov.Bar R. IV(2) (requiring a lawyer to maintain a respectful attitude toward the courts).

*Count Two: Conduct prejudicial to the administration of justice*

{¶ 10} In its complaint, relator alleged that over a nine-year period, Bahan had engaged in seven additional incidents of improper conduct while under the

influence of alcohol and that her conduct violated Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The board found that Bahan's conduct in three of those incidents violated Prof.Cond.R. 8.4(d).

{¶ 11} In the first incident, while attending a charity benefit with her husband in May 2019, Bahan called the Logan County Sheriff's Office to report that "William Branan" had stolen her vehicle. Approximately ten minutes into that call, a male got on the phone and informed the dispatcher that "William Branan" was Bahan's husband, that Bahan was mad at him, and that there was no car theft in progress.

{¶ 12} During Bahan's disciplinary hearing, Deputy Miriam Reames testified that she responded to Bahan's call. Reames was unable to locate Bahan at the charity benefit, so she went to Bahan's home along with another deputy. There, Bahan told Reames that she and her husband had had a verbal disagreement, that he had gone outside, and that she thought he had left her at the party. At some point after Bahan called the sheriff's office, Bahan's husband took her home. Reames concluded that Bahan was intoxicated because her eyes were glassy and bloodshot and there was an odor of alcohol coming from her person and breath.

{¶ 13} The second incident involved a phone call that Bahan made to the sheriff's office in February 2017 to report that her teenaged son had stolen her iPad. While Bahan was speaking to a sheriff's deputy, her husband called 9-1-1 to report that she was "heavily intoxicated and causing problems." Sheriff's deputies arrived at Bahan's residence and learned that her son had left the home with the iPad. The deputies noticed that Bahan was loud and unsteady on her feet. She was also slurring her speech and had bloodshot and glassy eyes and a strong odor of alcohol on her breath. They concluded that she was intoxicated. Bahan yelled profanities at the deputies as they helped her husband leave the home. The deputies admonished her to calm down and repeatedly told her to remain in her home.

{¶ 14} No charges were ever brought against Bahan's son, but Bahan was cited for disorderly conduct—though that charge was later dismissed. The board found that Bahan engaged in conduct prejudicial to the administration of justice and that she abused the legal system by reporting these two trivial incidents to law-enforcement authorities.

{¶ 15} The third incident occurred while Bahan was serving as a guardian ad litem ("GAL") in 2010. Bahan had attempted to make a surprise visit to the home of her ward's mother, but the mother was not at home. Bahan and her husband went to eat dinner at a nearby restaurant, where she drank one glass of wine with her meal before returning to the mother's home to complete the visit. The board found that by drinking alcohol before a home visit while serving as a GAL, Bahan engaged in conduct that was prejudicial to the administration of justice.

**Bahan's Objections to the Board's Findings**

{¶ 16} Bahan raises four objections to the board's findings of fact, misconduct, and evidentiary rulings. For the following reasons, we overrule all but her third objection.

*Gov.Bar R. IV(2) is constitutional as applied to Bahan's conduct in this case*

{¶ 17} In her first objection, Bahan contends that her conduct at the Logan County Bar Association event may not support a finding of a violation of Gov.Bar R. IV(2), because that conduct consisted of political speech that is protected under the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution, and was not directed "toward the courts." Specifically, Bahan contends that her speech at the event was political in nature because she intended to express her disapproval of Judge Goslee's courtroom conduct that purportedly led the bar association to present him with a mock award that evening. Relator, in contrast, argues that this matter is not about the freedom of speech, but

rather "the uncontrolled, self-indulgent, drunken behavior of a member of the bar." For the following reasons, we find that Bahan's objection is without merit.

*Factual background*

{¶ 18} At its 2018 holiday event, at which approximately 50 to 70 people attended, the Logan County Bar Association offered bar members and their spouses an opportunity to socialize over dinner, drinks (including alcohol), and some dancing. The event also included an awards ceremony.

{¶ 19} According to Bahan and other witnesses, she was not intoxicated when she arrived at the event, but she began to drink wine soon thereafter. Bahan testified that she had about three glasses of wine, because that is her "public limit." She did not believe that she was intoxicated, but she also did not believe that it was a good idea for her to drive herself home. Judge Charles Chamberlain testified that Bahan "was a little unsteady on her feet." Although her conduct suggests otherwise, Bahan denied that alcohol played any role in her conduct at the event.

{¶ 20} Witnesses testified that they did not notice anything unusual about Bahan's behavior until after dinner. Natasha Kennedy, a magistrate with the Logan County Family Court, testified that as the evening progressed, she observed some tension between Bahan and Judge Goslee.

{¶ 21} After dinner had been served, Judge Goslee was presented with a mock award that he described as "a bit of a roast." As he gave remarks after accepting the award, Bahan started calling him foul names under her breath and her voice got progressively louder. As the people around her told her to be quiet, she stood up and loudly interrupted Judge Goslee, calling him a "piece of shit," an "asshole," and a "motherfucker."

{¶ 22} Bahan's comments were loud enough for the entire room to hear. Kennedy and Miranda Warren, an attorney who was seated five to ten feet away from Bahan, testified that the other attendees appeared to be shocked by Bahan's conduct. Warren stated that she could see Judge Goslee and believed that he heard

Bahan's outburst, though she, Kennedy, and another attorney all testified that Judge Goslee did not react.

### The First Amendment and the regulation of attorney conduct

{¶ 23} As a general matter, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Chicago Police Dept. v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). That said, "the First and Fourteenth Amendments have never been thought to give absolute protection to every individual to speak whenever or wherever he pleases or to use any form of address in any circumstances that he chooses." *Cohen v. California*, 403 U.S. 15, 19, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

{¶ 24} "It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. Nevada State Bar*, 501 U.S. 1030, 1071, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). And "[e]ven outside the courtroom, * * * lawyers in pending cases [a]re subject to ethical restrictions on speech to which an ordinary citizen would not be." *Id*.

{¶ 25} The United States Supreme Court has also recognized that "[e]ven in an area far from the courtroom and the pendency of a case, our decisions dealing with a lawyer's right under the First Amendment to solicit business and advertise, contrary to promulgated rules of ethics, have not suggested that lawyers are protected by the First Amendment to the same extent as those engaged in other businesses." *Id.* at 1073, citing *Bates v. Arizona State Bar*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), *Peel v. Attorney Registration and Disciplinary Comm. of Illinois*, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), and *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). "In each of these cases, [the court] engaged in a balancing process, weighting the

State's interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech that was at issue." *Gentile* at 1073.

{¶ 26} Perhaps more importantly, the Supreme Court has recognized an attorney's duty to maintain a respectful attitude toward the courts.

> [T]he obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not to merely be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally and for their judicial acts.

*Bradley v. Fisher*, 80 U.S. 335, 355, 20 L.Ed. 646 (1871).

{¶ 27} In an effort to preserve the honor, integrity, and dignity of the legal profession and Ohio courts, this court has adopted Gov.Bar R. IV(2) to regulate attorney conduct toward the courts. That rule provides: "It is the duty of the lawyer to maintain a respectful attitude toward the courts, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance." While recognizing that judges and justices are entitled to receive the support of lawyers against unjust criticism and clamor, the rule declares that a lawyer has the right and duty to submit a grievance to proper authorities, "[w]henever there is proper ground for serious complaint of a judicial officer." *Id.* Indeed, it emphasizes that "[t]hese charges should be encouraged and the person making them should be protected." *Id.*

{¶ 28} The requirements of Gov.Bar R. IV(2) are consistent with an Ohio lawyer's oath to conduct herself "with dignity and civility and show respect toward judges, court staff, clients, fellow professionals, and all other persons" in her capacity as an attorney and an officer of the court. Gov.Bar R. I(9)(A). Those requirements are also consistent with Section 5 of the preamble to the Ohio Rules of Professional Conduct, which provides that "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials," and underscores that "[a]lthough a lawyer, as a citizen has a right to criticize such officials, the lawyer should do so with restraint and avoid intemperate statements that tend to lessen public confidence in the legal system."

{¶ 29} Significantly, none of these regulations prohibit a lawyer from speaking on any subject matter. Instead, they require a lawyer to conduct herself with the dignity and respect that is commensurate with her role as an officer of the court to encourage civility and to preserve public confidence in the legal system.

### *Analysis of Bahan's objection*

{¶ 30} Bahan contends that Gov.Bar R. IV(2) should not be broadly interpreted so as to proscribe the use of offensive language to criticize a judge. Citing *Disciplinary Counsel v. Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, Bahan asserts that attorneys may still "freely exercise free speech rights and make statements supported by a reasonable factual basis, even if the attorney turns out to be mistaken." But Bahan was not charged under the rule that prohibits an attorney from knowingly making a false accusation against a judge. She was charged under a rule that requires a lawyer to maintain a respectful attitude toward the courts.

{¶ 31} Here, Bahan's conduct is not objectionable simply because she publicly criticized Judge Goslee and it remains unclear how directing profane insults toward a judge is "political speech." Bahan argues that she intended to

9

express her disapproval of Judge Goslee's courtroom conduct that purportedly led the bar association to present him with a mock award that evening. But Bahan did not associate her vulgarities with any other facts or context. Instead, on its face, Bahan's conduct—offensive name-calling, which was apparently induced by alcohol and directed toward a sitting judge while he was being publicly recognized at a bar-association function—erodes the civility, dignity, and respect for the rule of law contrary to an attorney's duty described in Gov.Bar R. IV(2).

{¶ 32} Bahan argues that her speech is not sanctionable under the First Amendment standard set forth in *Berry v. Schmitt*, 688 F.3d 290 (6th Cir.2012). But the Sixth Circuit in *Berry* expressly stated: "We also take no position on the constitutionality of sanctioning a lawyer's profanity or threats directed against the courts, or other examples of a lawyer's unmitigated expression of disrespect for the law, even outside the courtoom." *Id.* at 305. Bahan's conduct is more fitting of this description than to being categorized as political speech. Thus, *Berry* is not applicable to the facts of this case.

{¶ 33} Unlike the opinion concurring in judgment only, we fail to see how finding misconduct in this case will have a chilling effect on "legitimate [attorney] criticism of the judiciary." Opinion concurring in judgment only, ¶ 106. Surely, we are not asked to determine whether Bahan's choice expletives to describe Judge Goslee are "legitimate criticism" or even whether they are knowingly false. The opinion concurring in judgment only also suggests that a finding of misconduct here sends a message that attorneys should not get "anywhere close to the line of saying something about the judiciary that someone might consider disrespectful." *Id*. at ¶ 107. We do not agree that the facts of this case are "close to the line" or otherwise warrant such a concern.

{¶ 34} By accepting the privilege of practicing law, an attorney accepts certain conditions and duties as an officer of the court. *Cleveland Metro. Bar Assn. v. Morton*, __ Ohio St.3d __, 2021-Ohio-4095, __ N.E.3d __, ¶ 38 (O'Connor, C.J.,

concurring). And while the First Amendment may be invoked as a defense for permissible criticism, *see, e.g.*, *In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959), *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, that is not the situation here. We therefore overrule Bahan's first objection and adopt the board's finding that her conduct at the December 2018 Logan County Bar Association event violated Gov.Bar R. IV(2).

{¶ 35} The opinion concurring in part and dissenting in part asserts that Gov.Bar R. IV(2) "is not a stand-alone, independent ground on which to discipline Bahan." Opinion concurring in part and dissenting in part, ¶ 66. It also asserts that because Gov.Bar R. IV(2) is not one of the Rules of Professional Conduct, it "cannot serve as an underlying basis for an allegation of misconduct." *Id*. at ¶ 77. But those claims are without basis.

{¶ 36} Indeed, this court has publicly reprimanded an attorney based solely on his violations of the Rules of the Government of the Bar. *See, e.g.*, *Cincinnati Bar Assn. v. Brand*, 164 Ohio St.3d 542, 2021-Ohio-2122, 173 N.E.3d 1211. In *Brand*, a *unanimous* decision issued last year, this court adopted the board's findings of misconduct based on Jack Irwin Brand's violations of Gov.Bar R. V(23)(C) (requiring a lawyer seeking to enter into an employment, contractual, or consulting relationship with a disqualified or suspended attorney to register that relationship with the Office of Disciplinary Counsel), Gov.Bar R. V(23)(D) (requiring the lawyer entering into an employment, contractual, or consulting relationship with a disqualified or suspended attorney to receive written acknowledgment of that relationship from the Office of Disciplinary Counsel before the relationship commences), and Gov.Bar R. V(23)(F) (requiring an attorney to provide advance written notice to a client that a disqualified or suspended attorney will perform work or provide services on the client's case). To be clear, this court found no accompanying violation of a Rule of Professional Conduct. And that decision was not an anomaly. *See, e.g.*, *Columbus Bar Assn. v.*

*Dugan*, 113 Ohio St.3d 370, 2007-Ohio-2077, 865 N.E.2d 895, ¶ 3 (publicly reprimanding an attorney for violating Gov.Bar R. V(8)(G)(1) (requiring a lawyer who employs a lawyer with a suspended license to register the employment with the Office of Disciplinary Counsel) and, for separate conduct, violating former disciplinary rules); *Cleveland Bar Assn. v. Allanson*, 72 Ohio St.3d 228, 648 N.E.2d 1340 (1995) (publicly reprimanding an attorney for violating former Gov.Bar R. V(5)(A), which is now Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation) and Gov.Bar R. VI(1)(A) (requiring an attorney to comply with regulations for biennial registration and payment of fees)).

{¶ 37} In addition, this court has disciplined attorneys for violating the same rule at issue here, Gov.Bar R. IV(2). *See Disciplinary Counsel v. Proctor*, 131 Ohio St.3d 215, 2012-Ohio-684, 963 N.E.2d 806, ¶ 5, 8; *Disciplinary Counsel v. Frost*, 122 Ohio St.3d 219, 2009-Ohio-2870, 909 N.E.2d 1271, ¶ 5; *Disciplinary Counsel v. Watterson*, 114 Ohio St.3d 159, 2007-Ohio-3615, 870 N.E.2d 1153, ¶ 29. Although the attorneys in those cases also violated various former disciplinary rules, we did not make a distinction between the two sets of rules or otherwise disregard the violation of Gov.Bar R. IV(2), as the opinion concurring in part and dissenting in part suggests that we must do here.

{¶ 38} The opinion concurring in part and dissenting in part asserts that because Gov.Bar R. IV(1) places attorneys on notice that they must comply with the Rules of Professional Conduct, but does not expressly state that attorneys must also comply with the Rules for the Government of the Bar, this court does not have the authority to sanction an attorney for violating the Rules for the Government of the Bar. But Gov.Bar R. IV(1) does not contain any such limitation. Nor does it contain language stating that the Rules of Professional Conduct are the *exclusive* parameters on an attorney's conduct. The Rules for the Government of the Bar delineate things like the requirements for an attorney's admission to the bar, attorney registration, and continuing legal education. *See* Gov.Bar R. I, VI, and X.

But if we were to accept the statements in the separate opinion as true, the Rules for the Government of the Bar would be unenforceable unless a parallel Rule of Professional Conduct existed. And that interpretation is not supported by either set of rules or this court's precedent.

{¶ 39} If the separate opinions intend to suggest that the Rules for the Government of the Bar are not clear regarding an attorney's risk of being sanctioned for his or her failure to comply with those rules, then there is a process by which this court may amend those rules. However, not even Bahan argues that she may not be sanctioned for violating one of the Rules for the Government of the Bar. Instead, Bahan argues that her conduct did not constitute a violation of Gov.Bar R. IV(2). Thus, our analysis here remains within that scope, and we rely on this court's significant body of precedent in which it affirmed findings of misconduct based on a violation of the Rules for the Government of the Bar.

*The record supports two of the board's three findings that Bahan engaged in conduct that was prejudicial to the administration of justice*

{¶ 40} In her second and third objections, Bahan contends that the evidence does not support the board's finding that the incidents of alcohol-related conduct in Count Two were prejudicial to the administration of justice. Specifically, Bahan contends that (1) she appropriately called the sheriff's office to report the alleged theft of her car and iPad and (2) relator's evidence was insufficient to support a finding that drinking a single glass of wine with dinner before conducting a visit to her ward's home was prejudicial to the administration of justice.

{¶ 41} Bahan maintains that she had a right to report a crime or an emergency and that her May 2019 and February 2017 calls to the Logan County Sheriff's Office did just that. To support that claim, she asserts (1) that the deputy who responded to the call pertaining to the theft of her iPad testified that she "did the right thing" by contacting law enforcement, and (2) that another officer, who testified about responding to the call that Bahan had made regarding the alleged

theft of her vehicle, "likewise saw no problem with [her] contact with law enforcement." Bahan argues that both officers expressed their preference to receive calls like Bahan's sooner rather than later when they involve situations that could lead to domestic violence.

{¶ 42} All told, law-enforcement officers spent more than an hour responding to Bahan's claim that her vehicle had been stolen. And Bahan's initial report to law enforcement in no way suggested that the alleged theft involved a domestic dispute or a threat of domestic violence.

{¶ 43} Regarding the alleged iPad theft, the deputy's audio recording of the incident suggests that Bahan's son was authorized to use the device for schoolwork, but that Bahan attempted to take it away from him that night. Her son retreated to his room before leaving the home for the night.

{¶ 44} The deputies who responded to the scene never investigated Bahan's allegations that her son had stolen her iPad because her husband had also called 9-1-1 to report—and the deputies' observations confirmed—that Bahan was heavily intoxicated and was the one who had been causing problems at the home. Bahan's retrospective suggestion that her drunken call may have been intended to forestall the potential for domestic violence from which her son had retreated is not persuasive. Nor does the absence of criminal charges for her drunken and questionable reports absolve her of her misuse of law-enforcement resources. We therefore overrule Bahan's second objection and find that her two reports to law enforcement were prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

{¶ 45} However, we sustain Bahan's third objection challenging the board's findings regarding her conduct as a GAL more than 10 years ago. Although Bahan admitted to having consumed a glass of wine before conducting a surprise visit at the home of her ward's mother, she also testified that after that visit, she and the judge who had appointed her to the case discussed the matter. Ultimately, Bahan

completed her representation in that case and thereafter submitted a bill and received payment. And she stated that the judge continued to appoint her as a GAL in other cases. The judge, however, testified that he believed that Bahan had withdrawn from the case at his suggestion.

{¶ 46} In the absence of any clear and convincing evidence tending to show that Bahan's judgment was impaired that night or that her alcohol consumption somehow prejudiced the rights of the ward's mother, we reject the board's findings that her conduct in that case was prejudicial to the administration of justice. We therefore sustain Bahan's third objection.

{¶ 47} Having overruled Bahan's first and second objections, we agree with the board's findings that her conduct violated Gov.Bar R. IV(2) and Prof.Cond.R. 8.4(d).

*Bahan has failed to prove that the panel's evidentiary rulings prejudiced her case*

{¶ 48} Bahan's fourth objection relates to the panel's evidentiary rulings at her disciplinary hearing. On October 21, 2020, relator filed a motion in limine seeking to exclude the testimony of Bahan's witnesses who were not disclosed to relator until October 20, 2020—one week before the disciplinary hearing. In response, Bahan argued that the panel chair had vacated every deadline for the disclosure of witnesses except for the order directing the parties to file their final witness lists, hearing exhibits, and stipulations by October 20, 2020. At the beginning of the disciplinary hearing, the panel chair issued an interlocutory order that Bahan's newly disclosed witnesses would be permitted to testify about Bahan's character, reputation, and professionalism and their observations regarding her alcohol use, but that they would not be permitted to testify about any of the contested matters in the case. Bahan objects to that ruling and argues that the panel's limitation of her witnesses' testimony violated her right to due process.

{¶ 49} The record shows that the panel chair vacated two scheduling orders in Bahan's disciplinary case—one requiring the parties to disclose their witness

lists on or before March 18, 2020, and the other requiring that disclosure was to be made no later than June 5. Both orders were vacated *after* the disclosure-of-witness-list deadlines had passed. The order vacating the June 5 deadline plainly contemplated that the parties had already exchanged their initial witness lists as it stated that "[t]he parties shall file *final* witness lists, hearing exhibits, and stipulations on or before October 20, 2020." (Emphasis added.) But Bahan did not submit a witness list of any kind until October 20, 2020.

{¶ 50} Although the panel's scheduling orders could have been more carefully drafted, Bahan's first two deadlines for disclosing witnesses had passed well before the orders vacating those deadlines. In addition, Evid.R. 103(A)(2)— which is made applicable to disciplinary proceedings by Gov.Bar R. V(27)(A)— provides that an error may not be predicated on a ruling which excludes evidence unless the ruling affects a party's substantial right *and* the party made the substance of the evidence known to the court.

{¶ 51} Here, the panel chair agreed to keep an open mind regarding the extent of the testimony that he would allow from Bahan's witnesses and stated that Bahan could proffer any testimony that she believed to have been wrongly excluded. But Bahan made only one proffer of evidence to counter testimony that she had smelled strongly of alcohol while representing a criminal defendant at trial—and it was unrelated to any of the misconduct that had been found by the board. Because Bahan failed to proffer the excluded evidence or otherwise demonstrate how the panel's evidentiary ruling prejudiced her case, we overrule her fourth objection.

### Recommended Sanction

{¶ 52} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 53} The board found that four aggravating factors are present in this case, namely that Bahan (1) has prior discipline, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, and (4) refused to acknowledge the wrongful nature of her conduct. *See* Gov.Bar R. V(13)(B)(1), (3), (4), and (7). As mitigating factors, the board found that Bahan acted without a dishonest or selfish motive and that she exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(2) and (4). The board declined to accord any mitigating effect to the testimony of Mark O'Connor (a former judge in the Logan County Court of Common Pleas) and Wade Thomas Minahan (a former magistrate in the Logan County Court of Common Pleas), upon finding that those witnesses testified to Bahan's *competence* as an attorney and not to her character or reputation as contemplated by Gov.Bar R. V(13)(C)(5).

{¶ 54} Although Bahan has been evaluated by OLAP twice in the past, it is not clear from the record that she has submitted to a comprehensive substance-use assessment conducted by a qualified chemical-dependency professional in conjunction with the alcohol-related incidents in this case.

{¶ 55} The board considered the sanctions we have imposed for comparable misconduct in multiple cases. There are several cases in which we disciplined an attorney (or a judge) for multiple ethical violations, including violations of Gov.Bar R. IV(2), for making unfounded allegations against judges and other public officials. For example, in *Gardner*, 99 Ohio St.3d 416, 2003-Ohio-4048, 793 N.E.2d 425, we imposed a six-month suspension on an attorney who, in a motion for reconsideration, accused an appellate-court panel of being dishonest, ignoring well-established law, and distorting the truth when the appellate court ruled against his client. And in *Disciplinary Counsel v. Ferreri*, 85 Ohio St.3d 649, 710 N.E.2d 1107 (1999), we imposed an 18-month suspension, with 12 months conditionally stayed, on a judge who had made false and unfounded statements to the media about judges and other public officials. Ferreri stated that (1) an appellate-court panel

had issued a politically motivated decision, (2) a judge had engaged in a conspiracy to cover up the mistreatment of juveniles by detention-center staff, and (3) another judge or those under his direct supervision had lied to the federal government about the success of a juvenile boot-camp program.

{¶ 56} The board also considered the sanctions that we imposed on attorneys who engaged in alcohol-related misconduct. For example, in *Disciplinary Counsel v. Mitchell*, 158 Ohio St.3d 356, 2019-Ohio-5218, 142 N.E.3d 669, we imposed a one-year conditionally stayed suspension on an attorney who was convicted of driving while intoxicated and fleeing the scene of an accident involving injuries to the driver and passenger of the other vehicle. In *Lorain Cty. Bar Assn. v. Lewis*, 152 Ohio St.3d 614, 2018-Ohio-2024, 99 N.E.3d 404, we imposed a two-year suspension, with six months conditionally stayed, on an attorney who had left the scene of a motor-vehicle accident after a night of drinking and who was later convicted of obstructing official business for submitting a false witness statement to police. And in *Disciplinary Counsel v. Scurry*, 115 Ohio St.3d 201, 2007-Ohio-4796, 874 N.E.2d 521, we imposed a two-year conditionally stayed suspension on an attorney who, while intoxicated, met with clients and attempted to manage his professional affairs.

{¶ 57} The board found that Bahan's profane and alcohol-fueled outburst against Judge Goslee was not nearly as egregious as the allegations that had been made against the attorney in *Gardner*. The board further noted that Bahan's outburst at a private, bar-association event was also not as egregious as what had occurred in *Fererri*—i.e., that judge made some negative statements that were published by the media. Moreover, the board found that none of Bahan's misconduct adversely affected her clients or resulted in a criminal conviction, rendering her conduct substantially less egregious than the attorneys in *Mitchell* and *Lewis*—both of whom left the scene of alcohol-related motor-vehicle accidents. Balancing these facts with the aggravating and mitigating factors present in this

case, the board determined that Bahan's misconduct warranted a lesser sanction than the fully stayed one-year suspension that we imposed in *Mitchell*. The board therefore recommends that we impose a six-month suspension, with the entire suspension stayed on the condition that Bahan engage in no further misconduct and pay the cost of these proceedings.

### Bahan's Objection to the Recommended Sanction

{¶ 58} Bahan objects to the board's recommended sanction and argues that a public reprimand is the appropriate sanction for her misconduct. In support of that sanction, she cites three cases in which we publicly reprimanded attorneys for misconduct that she believes to be more analogous to her own: *Erie-Huron Cty. Bar Assn. v. Bailey*, 161 Ohio St.3d 146, 2020-Ohio-3701, 161 N.E.3d 590 (publicly reprimanding an attorney who knowingly or recklessly made false statements on Facebook concerning the integrity of the judge who had jailed his father for direct contempt of court), *Disciplinary Counsel v. Grimes*, 66 Ohio St.3d 607, 614 N.E.2d 740 (1993) (publicly reprimanding an attorney for making inappropriate and disrespectful statements about a judge to a newspaper reporter and for making inappropriate statements during a hearing), and *Columbus Bar Assn. v. Riebel*, 69 Ohio St.2d 290, 432 N.E.2d 165 (1982) (publicly reprimanding an attorney who directed verbal and written obscenities at an adverse party in a divorce proceeding). But none of those attorneys had a record of prior discipline, and Bahan does.

{¶ 59} Next, Bahan asserts that the board erred by drawing a false distinction between evidence of "character" and evidence of "competence," and it therefore failed to credit her with the good-character-or-reputation mitigation factor, *see* Gov.Bar R. V(13)(C)(5), based on the favorable testimony that former judge O'Connor and former magistrate Minahan gave regarding her competence as an attorney. Bahan cites two cases in which we afforded some mitigating effect to evidence of the respondents' competence and/or professionalism as opposed to

their character or reputation. *See Disciplinary Counsel v. Adelstein*, 160 Ohio St.3d 511, 2020-Ohio-3000, 159 N.E.3d 1126, ¶ 16 (attributing some mitigating effect to client letters attesting to the respondent's competence and capability as an attorney); *Dayton Bar Assn. v. Rogers*, 116 Ohio St.3d 99, 2007-Ohio-5544, 876 N.E.2d 923, ¶ 17 (attributing some mitigating effect to client letters attesting to the respondent's competence and professionalism). But here, Bahan presented evidence from two judicial officers who had been retired for at least four years before the date of her disciplinary hearing and well before the misconduct in this case even occurred. And Judge O'Connor observed Bahan's courtroom performance after his retirement only once, in a case in which he served as a visiting judge. For these reasons, we find that evidence of Bahan's competence is of limited probative value and afford it no mitigating weight.

{¶ 60} Lastly, Bahan argues that she is entitled to a reduction in board costs that is commensurate with the overall results of this proceeding. She notes one case in which we reduced the amount of the costs that a respondent was liable to pay after 9 of the 17 alleged rule violations were dismissed. *See Akron Bar Assn. v. Shenise*, 143 Ohio St.3d 134, 2015-Ohio-1548, 34 N.E.3d 910, ¶ 26 (reducing the respondent's liability for costs from $9,571.08 to $4,000). In this case, however, relator withdrew one count from the complaint without presenting any evidence of the violations alleged therein and the panel dismissed a second count following the hearing. Bahan was found to have committed one of the two alleged rule violations charged in each of the two remaining counts. While the costs incurred in connection with this proceeding may be on the higher side of normal for the number of violations that we have found, we do not find that they are so out of line as to warrant a reduction.

{¶ 61} Having considered Bahan's misconduct, the relevant aggravating and mitigating factors, and the sanctions imposed for comparable misconduct, we agree that a six-month conditionally stayed suspension is the appropriate sanction

20

in this case. Given that Bahan's alcohol use played a significant role in the misconduct at issue, and that Bahan has not submitted to a substance-use assessment conducted by a qualified chemical-dependency professional since that misconduct occurred, a condition of the stay shall include a requirement that she submit to an OLAP substance-use assessment.

## Conclusion

{¶ 62} Accordingly, Natalie J. Bahan is suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that she engage in no further misconduct, submit to a substance-use assessment conducted by OLAP, and comply with all the recommendations arising from that assessment. If Bahan fails to comply with any condition of the stay, it will be lifted and she will serve the full six-month suspension. Costs are taxed to Bahan.

Judgment accordingly.

FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J., except for paragraphs 85 and 86.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 63} I agree with the majority that respondent, Natalie J. Bahan, violated Prof.Cond.R. 8.4(d), which prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice. On two occasions, she contacted law enforcement while intoxicated to report minor incidents involving her family. I therefore concur with the majority that the appropriate sanction is a six-month suspension, with the entire suspension stayed on the conditions that Bahan engage in no further misconduct, that she complete a substance-use assessment conducted by the Ohio Lawyers Assistance Program ("OLAP"), and that she comply with all

the recommendations arising from that assessment. I would also require Bahan to contact OLAP within 60 days after this court's judgment to begin the process for the substance-use assessment.

{¶ 64} I part ways with the majority's analysis regarding Count One, which alleges that Bahan violated Gov.Bar R. IV(2) by failing to maintain a "respectful attitude" toward the courts when she called a judge expletives during a bar-association holiday event.

{¶ 65} I agree with the opinion concurring in judgment only that the First Amendment of the United States Constitution prohibits this court from discipling an attorney solely for exhibiting a disrespectful attitude toward the courts. The majority today has made Gov.Bar R. IV(2) a content-based regulation that prohibits lawyers from calling judges—but no one else—rude names. More alarming is that this case is just part of a recent trend in which the majority is ordering that any criticism of the judiciary be kept silent. Last year, this court disciplined an attorney for impugning the integrity of this court when that attorney asserted that one of this court's judgments had been based on political motivations. *Cleveland Metro. Bar Assn. v. Morton*, ___ Ohio St.3d ___ 2021-Ohio-4095, ___ N.E.3d ___. Today, the majority punishes an attorney for failing to show the appropriate amount of respect toward a judge outside a courtroom. In barring attorney speech that supposedly erodes "respect for the rule of law," majority opinion, ¶ 31, the majority chills an attorney's ability to express dissatisfaction in the judiciary in words (that a judge is, perhaps, "incompetent," "unreasonable," or just "wrong") or tone. Ohioans should no more countenance the majority slicing away bit by bit at their fundamental right of the freedom of expression any more than they would permit the government to enter their homes to cut away the legs of their dining-room tables.

{¶ 66} The focus of this dissent, however, will be a textual analysis of the majority's disturbing trend toward ignoring the plain language of Ohio's

disciplinary rules. *See, e.g.*, *Morton* at ¶ 47-48 (Kennedy, J., dissenting). Although Gov.Bar R. IV(2) states that "[i]t is the duty of the lawyer to maintain a respectful attitude toward the courts," Gov.Bar R. IV(1) states that lawyers are obligated to comply with the Ohio Rules of Professional Conduct and that "[t]he willful breach of the Rules shall be punished by reprimand, suspension, disbarment, or probation as provided in Gov.Bar R. V." When these provisions are read together, the unmistakable conclusion of their meaning is that Gov.Bar R. IV(2) is not a stand-alone, independent ground on which to discipline Bahan because it is not one of the Rules of Professional Conduct. The fact that the parties have failed to make this argument in this case or that this court has failed to notice its inapplicability in past cases does not justify turning a blind eye to the plain language of Gov.Bar R. IV, especially when a person's freedom of speech hangs in the balance.

{¶ 67} Because Gov.Bar R. IV(1) limits attorney discipline to violations of the Rules of Professional Conduct, I would hold that Gov.Bar R. IV(2) cannot serve as an independent basis for sanctioning misconduct. Therefore, I would dismiss that count of the complaint on procedural grounds and would not reach Bahan's First-Amendment-grounds objection to that count.

{¶ 68} After dismissing Count One, I would sanction Bahan for violating Prof.Cond.R. 8.4(d). While there is no case directly on point for the misconduct at issue here, we have imposed sanctions for a single violation of Prof.Cond.R. 8.4(d) based on alcohol-related misconduct. Those cases, along with the aggravating and mitigating factors in this case, demonstrate that the appropriate sanction here is a six-month suspension, with the entire suspension stayed. Therefore, I concur in the majority's sanction—a six-month suspension, fully stayed on the conditions that Bahan engage in no further misconduct, that she contact OLAP for a substance-use assessment conducted by OLAP, and that she comply with all recommendations arising from that assessment. Additionally, I would require Bahan to contact OLAP

within 60 days of this opinion to begin the process for her substance-use assessment.

{¶ 69} For these reasons, I concur in part and dissent in part.

## Gov.Bar R. IV

{¶ 70} Count One of the complaint charged Bahan with misconduct from two separate sources, the Rules of Professional Conduct (Prof.Cond.R. 8.4(h)) and the Rules for the Government of the Bar (Gov.Bar R. IV(2)). The allegations stemmed from an alleged loud, profane, and drunken outburst that Bahan directed at a common-pleas-court judge during the Logan County Bar Association's annual holiday party. After the hearing, the panel unanimously dismissed the alleged violation of Prof.Cond.R. 8.4(h). The panel nevertheless proceeded to find that Bahan had violated Gov.Bar R. IV(2).

{¶ 71} The scope of the Rules of Professional Conduct provides "a framework for the ethical practice of law." Prof.Cond.R., Preamble [16]. "Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process." Id. at [19]. "[S]ince the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of breach of the applicable standard of conduct." Id. at [20]. The professional-conduct rules therefore establish the conduct that an attorney is required to abide by when engaging in the practice of law: (1) in the client-lawyer relationship, Prof.Cond.R. 1.1 through 1.18, (2) as a counselor, Prof.Cond.R. 2.1, 2.2 and 2.3, (3) as an advocate, Prof.Cond.R. 3.1 through 3.9, (4) in transactions with persons other than clients, Prof.Cond.R. 4.1 through 4.4, (5) in law firms and associations, Prof.Cond.R. 5.1 through 5.7, (6) in public service, Prof.Cond.R. 6.2 and 6.5, (7) regarding information about legal services, Prof.Cond.R. 6.1 through 6.7, and (8) for maintaining the integrity of the profession, Prof.Cond.R. 8.1 through 8.5.

{¶ 72} In comparison, the Rules for the Government of the Bar address, generally, two separate mandates. First, they establish the requirements and

procedures to become licensed to practice law in Ohio. *See, e.g.*, Gov.Bar R. I (admission to the practice of law) and XII (pro hac vice admission). Second, the rules set forth the professional responsibilities that are required for attorneys to remain licensed to practice law in Ohio. *See, e.g.*, Gov.Bar R. IV (professional responsibility), VI (registration of attorneys), and X (continuing legal education).

{¶ 73} The specific rule at issue, Gov.Bar R. IV, has two provisions:

> Section 1. Applicability. The Ohio Rules of Professional Conduct, effective February 1, 2007, as amended, shall be binding upon all persons admitted to practice law in Ohio. The willful breach of the Rules shall be punished by reprimand, suspension, disbarment, or probation as provided in Gov.Bar R. V.
>
> Section 2. Duty of Lawyers. It is the duty of the lawyer to maintain a respectful attitude toward the courts, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges and Justices, not being wholly free to defend themselves, are peculiarly entitled to receive the support of lawyers against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit a grievance to proper authorities. These charges should be encouraged and the person making them should be protected.

{¶ 74} I recognize that this court has previously disciplined attorneys for violating the Rules for the Government of the Bar in general and Gov.Bar R. IV(2) in particular. *See, e.g.*, *Disciplinary Counsel v. Brown*, 90 Ohio St.3d 273, 737 N.E.2d 516 (2000); *Disciplinary Counsel v. Cicero*, 78 Ohio St.3d 351, 678 N.E.2d 517 (1997). But in deciding those cases, the court never specifically addressed

whether Gov.Bar R. IV(2) could be a stand-alone violation. As we explained long ago, "A reported decision, although in a case where the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a question not passed upon or raised at the time of the adjudication." *State ex rel. Gordon v. Rhodes*, 158 Ohio St. 129, 107 N.E.2d 206 (1952), paragraph one of the syllabus. Therefore, prior decisions have little bearing on this issue.

{¶ 75} I also acknowledge that Bahan has not raised the issue whether Gov.Bar R. IV(2) may be a stand-alone violation. However, the failure to raise that issue does not prevent this court from reviewing it when called upon to determine whether an attorney may be sanctioned for violating Gov.Bar R. IV(2). In interpreting the Rules of Professional Conduct and the Rules for the Government of the Bar, we "have the authority and the duty to 'say what the law is.' " *In re Determination of Existence of Significantly Excessive Earnings for 2017 Under the Elec. Sec. Plan of Ohio Edison Co.*, 162 Ohio St.3d 651, 2020-Ohio-5450, 166 N.E.3d 1191, ¶ 105 (Kennedy, J., concurring in judgment only in part and dissenting in part), quoting *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). Therefore, we abdicate that responsibility when we fail to apply the correct meaning of a rule just because a party has not asked us to do so. *Id*.

{¶ 76} The majority gives two responses for why an attorney may be disciplined for violating Gov.Bar R. IV(2). First, it points out that Gov.Bar R. IV(1) does not "contain language stating that the Rules of Professional Conduct are the *exclusive* parameters on an attorney's conduct." Majority opinion at ¶ 38. But Gov.Bar R. IV(1) lists the sanctions that may be imposed for attorney misconduct. And if a violation for one of the Rules for the Government of the Bar were subject of those sanctions, one would naturally expect Gov.Bar R. IV(1) to say so. Instead, Gov.Bar R. IV(1) singles out the professional-conduct rules, and states that a violation of the Rules of Professional Conduct is to be punished by reprimand, suspension, disbarment, or probation. Accordingly, this statement creates the

common-sense inference that a violation of a different set rules (i.e., the Rules for the Government of the Bar) is not subject to those sanctions. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). To accept the majority's interpretation would mean disciplining an attorney solely by reading between the lines of Gov.Bar R. IV(1). We cannot do that. Second, the majority falls back on the position that a contrary holding would mean that the Rules for the Government of the Bar would be unenforceable unless a parallel Rule of Professional Conduct existed. Majority opinion at ¶ 38. But that is a judgment based on policy, and a policy judgment does not give this court license to read language that is not there to cure an oversight in Gov.Bar R. IV(1).

{¶ 77} The plain and unambiguous language of Gov.Bar R. IV(1) places attorneys on notice that their behavior and actions must comply with the Rules of Professional Conduct and that an intentional breach of one of those rules could result in discipline. Gov.Bar R. IV(2) is not one of the Rules of Professional Conduct, and in my view, this general statement cannot serve as an underlying basis for an allegation of misconduct.

{¶ 78} It is also important to note that Gov.Bar R. IV(2) admonishes attorneys to maintain a respectful attitude toward *the courts*. A court is " 'a place in which justice is judicially administered. It is the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law.' " *State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 34 Ohio St.2d 120, 121, 296 N.E.2d 544 (1973), quoting *Todd v. United States*, 158 U.S. 278, 284, 15 S.Ct. 889, 39 L.Ed. 982 (1895). As Gov.Bar R. IV(2) recognizes, there is a difference between a court and "the temporary incumbent of the judicial office." It is "a fundamental understanding of constitutional democracy" that "judges are not imperial." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 21, *overruled on other grounds by State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248. Nor are they "anointed priests set apart from the community and

spared the criticism to which * * * other public servants are exposed." *Bridges v. California*, 314 U.S. 252, 292, 62 S.Ct. 190, 86 L.Ed. 192 (1941) (Frankfurter, J., dissenting). Just like other public officials, judges are not insulated from public comment that "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). And here, Bahan made an expletive-laden personal attack against a sitting judge outside the courtroom setting. That setting—a bar-association holiday event—did not involve any need to maintain decorum and order *in the courtroom* to ensure the proper functioning of the court. Bahan's behavior, although classless, did not implicate, much less violate, Gov.Bar R. IV(2).

{¶ 79} To charge Bahan with misconduct for making improper statements against a member of the judiciary, then, relator would have to have alleged that Bahan violated Prof.Cond.R. 8.2(a), which provides that "[a] lawyer shall not make a statement that the lawyer *knows* to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judicial officer, or candidate for election or appointment to judicial office." (Italics sic.) However, the facts of this case do not support such an allegation. Bahan made personal attacks on the judge by using expletives. Those comments did not address his qualifications or integrity but rather were expressions of opinion that do not amount to defamation under the actual-malice standard, as established in *Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, that I believe is imposed by Prof.Cond.R. 8.2(a), but which this court has not adopted. *See Morton*, __ Ohio St.3d __, 2021-Ohio-4095, __ N.E.3d __, at ¶ 56-58 (Kennedy, J., dissenting).

{¶ 80} Because attorneys are not subject to discipline for violating Gov.Bar R. IV(2), I would dismiss Count One of the complaint. Therefore, the only remaining findings by the majority of misconduct by Bahan are the violations of

Prof.Cond.R. 8.4(d), and I agree with the majority that the evidence in this case proves that Bahan violated this rule.

### The Appropriate Sanction for Violating Prof.Cond.R. 8.4(d)

{¶ 81} Turning to the appropriate sanction in this matter, the relevant aggravating factors are that Bahan (1) has prior discipline, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, and (4) refused to acknowledge the wrongful nature of her conduct. *See* Gov.Bar R. V(13)(B)(1), (3), (4), and (7). The relevant mitigating factors are that Bahan (1) acted without a dishonest or selfish motive and (2) exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(2) and (4). I agree with the majority that the testimony of Mark O'Connor (a former judge in the Logan County Court of Common Pleas) and Wade Thomas Minahan (a former magistrate in the Logan County Court of Common Pleas) attesting to Bahan's competence is of limited probative value and should be afforded no mitigating weight.

{¶ 82} Recently, in *Cleveland Metro. Bar Assn. v. Hackerd*, 156 Ohio St.3d 545, 2019-Ohio-1340, 130 N.E.3d 254, ¶ 12, this court considered for the first time the appropriate sanction for a "stand-alone violation of Prof.Cond.R. 8.4(d)." In *Hackerd,* the attorney continued to represent his client after being disqualified by the trial court. We noted the absence of any aggravating factors and the presence of four mitigating factors. "Hackerd ha[d] no prior disciplinary record, he acted without a dishonest or selfish motive, he offered full and free disclosure to the board and demonstrated a cooperative attitude toward the disciplinary proceedings, and he presented evidence of his good character and reputation." *Id.* at ¶ 11, citing Gov.Bar R. V(13)(C)(1), (2), (4), and (5). On that record, this court determined that a public reprimand was the appropriate sanction for a single rule violation.

{¶ 83} Additionally, as recognized by the majority, sanctions that have been imposed on attorneys who engaged in alcohol-related misconduct should be considered. In *Disciplinary Counsel v. Mitchell*, 158 Ohio St.3d 356, 2019-Ohio-

5218, 142 N.E.3d 669, this court imposed a one-year conditionally stayed suspension on an attorney based on his convictions for driving while intoxicated and leaving the scene of an accident involving injuries to the driver and passenger of the other vehicle. In *Lorain Cty. Bar Assn. v. Lewis*, 152 Ohio St.3d 614, 2018-Ohio-2024, 99 N.E.3d 404, the court imposed a two-year suspension, with six months conditionally stayed, on an attorney who after being out drinking, left the scene of a motor-vehicle accident and was later convicted of obstructing justice for submitting a false witness statement to police. And in *Disciplinary Counsel v. Scurry*, 115 Ohio St.3d 201, 2007-Ohio-4796, 874 N.E.2d 521, ¶ 4, this court imposed a two-year conditionally stayed suspension on an attorney who, among other things, "repeatedly met with clients and attempted to manage his professional affairs while intoxicated."

{¶ 84} Bahan's misconduct is significantly more egregious than the continued representation of a client after disqualification in *Hackerd* because it was a pattern of conduct. She contacted law enforcement twice and made complaints against family members to punish and embarrass that family member. Additionally, *Hackerd* is not analogous to this case, because of the aggravating factors present here. However, Bahan's misconduct does not rise to the level of the behavior sanctioned in *Mitchell*, *Lewis*, or *Scurry*. As recognized by the majority, Bahan's misconduct did not result in harm to any clients or a criminal conviction. Although she was intoxicated on the two occasions that she called the sheriff's office to report that family members had stolen her property, she was not representing clients or acting in the professional capacity of an attorney.

{¶ 85} Guided by our caselaw, I agree with the majority that the appropriate sanction for Bahan's misconduct is a six-month suspension, with the entire suspension stayed on the condition that Bahan engage in no further misconduct, that she complete a substance-use assessment conducted by OLAP, and that she comply with all the recommendations arising from that assessment. However, I

would also require Bahan to contact OLAP within 60 days after this court's judgment to begin the process for the substance-use assessment.

{¶ 86} Therefore, I concur in part and dissent in part.

DEWINE, J., concurs in the foregoing opinion, except for paragraphs 85 and 86.

———————————

**DEWINE, J., concurring in judgment only**.

{¶ 87} Today, the majority holds that an attorney may be punished under the Rules for the Government of the Bar of Ohio for speech that fails "to maintain a respectful attitude toward the courts." Majority opinion, ¶ 26. In doing so, it exceeds the limits of our disciplinary authority. Our rules allow us to punish only attorney speech about a judge that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity. Prof.Cond.R. 8.2(a). What's more, in holding that an attorney's speech may be punished simply because it is disrespectful of the judiciary, the majority makes mincemeat of First Amendment protections. The unfortunate result will almost certainly be to chill other attorneys from engaging in legitimate criticism of the judiciary.

*We lack the authority to discipline an attorney for speech that is critical of the judiciary under the Rules for the Government of the Bar*

{¶ 88} I have no quarrel with the majority's decision to discipline Natalie Bahan for violating Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) by making unnecessary calls to law enforcement while she was intoxicated. And based on these violations, I concur with the majority as to the sanction it imposes. But I take issue with the majority's decision to discipline Bahan for violating Gov.Bar R. IV(2) (requiring a lawyer to maintain a respectful attitude toward the courts) for making demeaning statements about a common-pleas judge at a bar association's holiday party.

**{¶ 89}** As the opinion concurring in part and dissenting in part points out, Gov.Bar R. IV(2) does not provide this court with the authority to discipline an attorney for engaging in speech that is critical of the judiciary. The Rules for the Government of the Bar make clear that it is the Rules of Professional Conduct that prescribe the standards under which an attorney may be disciplined. Gov.Bar R. IV(1) provides that "[t]he willful breach of the Rules [of Professional Conduct] shall be punished by reprimand, suspension, disbarment, or probation."

**{¶ 90}** Thus, when it comes to disciplining attorney speech that is critical of the judiciary, we must look to the standards set forth in the Rules of Professional Conduct. Prof.Cond.R. 8.2(a) explicitly defines what an attorney may not say about a judge: "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judicial officer." The majority errs by ignoring the professional-conduct rule that defines the standards under which speech critical of the judiciary may be sanctioned and instead opts to impose discipline under Gov.Bar R. IV(2)'s amorphous "respectful attitude towards the courts" language.

### *Using Gov.Bar R. IV(2) as a basis to discipline attorney speech is inconsistent with the First Amendment*

**{¶ 91}** Not only is there no basis for this court to discipline an attorney for an independent violation of Gov.Bar R. IV(2), but in doing so, the majority eviscerates the protections on speech afforded by the Ohio and United States Constitutions. The majority punishes Bahan for violating Gov.Bar R. IV(2)'s admonition that "[i]t is the duty of the lawyer to maintain a respectful attitude toward the courts." Attorney criticism of courts, however, is expressly regulated by Prof.Cond.R. 8.2(a), which provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judicial officer." This professional-conduct rule was carefully calibrated so as not to abridge First Amendment

freedoms by adopting the actual-malice standard from *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (statement is made with actual malice when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not"). In saying that an attorney's speech may now be punished simply because it fails to "maintain a respectful attitude toward the courts," majority opinion at ¶ 26, the majority substitutes an amorphous standard for the one that was developed to conform with United States Supreme Court precedent. It thus allows for the punishment of speech beyond that proscribed by Prof.Cond.R. 8.2(a)—speech that is entitled to protection under the Ohio and United States Constitutions.

{¶ 92} Just recently, the same majority that writes today stretched the meaning of Prof.Cond.R. 8.2(a) well beyond its terms when it held that an attorney's criticism of the judiciary may be punished even though the attorney's statements have not been shown to be false. *See Cleveland Metro. Bar Assn. v. Morton*, __ Ohio St.3d __, 2021-Ohio-4095, __ N.E.3d __. What it does in this case is even more troubling. Today, it renders Prof.Cond.R. 8.2(a)'s actual-malice standard largely beside the point. In essence, the majority says *if we think your speech is disrespectful, we can punish you even if your speech doesn't violate Prof.Cond.R. 8.2(a).*

{¶ 93} Never mind that this holding flies in the face of controlling precent from the United States Supreme Court. District Attorney Jim Garrison certainly did not have a "respectful attitude toward the courts" when he held a press conference criticizing a group of local judges for "inefficiency [and] laziness" and suggested that the judges' conduct might be explained by "racketeer influences on [the parish's] eight vacation-minded judges." *Garrison v. Louisiana*, 379 U.S. 64, 66, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Nonetheless, the United States Supreme Court found that Garrison's speech was entitled to constitutional protection and that

it could be punished only if it satisfied *Sullivan*'s actual-malice standard. *Garrison* at 78-79.

{¶ 94} The majority simply ignores this controlling precedent. Instead, to justify its holding that attorney speech may be restricted just because it is disrespectful to a court, the majority reaches back to 1871 and suggests that what is "most important[]" is dicta from a case dealing with judicial immunity. *See* majority opinion at ¶ 26, quoting *Bradley v. Fisher*, 80 U.S. 335, 355, 20 L.Ed. 646 (1871). What the majority neglects to mention is that in the 151 years since *Bradley* was decided, the United States Supreme Court has never cited the *Bradley* dicta to justify a restriction on attorney speech. Not once.

{¶ 95} To the contrary, the United States Supreme Court has explained that "speech cannot be punished * * * 'to protect the court as a mystical entity or the judges as individuals or as anointed priests set apart from the community and spared the criticism to which in a democracy other public servants are exposed." *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 842, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), quoting *Bridges v. California*, 314 U.S. 252, 292, 62 S.Ct. 190, 86 L.Ed. 192 (1941) (Frankfurter, J., dissenting). Today, though, the majority holds just the opposite. Speech about judges can now be punished merely because it is disrespectful.

{¶ 96} Brazenly, the majority even cites *Cohen v. California*, 403 U.S. 15, 19, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), to support the result that it reaches today. *See* majority opinion at ¶ 23. *Cohen*, of course, is the seminal free-speech case in which the United States Supreme Court held that California authorities could not punish a man for wearing a jacket bearing the words "Fuck the Draft" in a county courthouse. "One of the prerogatives of American citizenship," the court explained, "is the right to criticize public men and measures—and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation." *Id.* at 26, quoting *Baumgartner v. United States*, 322 U.S.

665, 673-674, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944). Fair to say, the *Cohen* court's conception of the First Amendment is dramatically different than the one the majority employs today.

### *When speech is punished because of its subject, the regulation is not content neutral*

{¶ 97} A particularly troubling aspect of the majority opinion is its rejection of even the most basic principles of First Amendment jurisprudence. The majority never even acknowledges that in holding an attorney may be disciplined for out-of-courtroom speech simply because it is about a judge, it is imposing a content-based restriction on speech. "Government regulation of speech is 'content based' if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Gilbert*, 576 U.S. 155, 163, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015). Here the regulation is specifically based on the "topic discussed" (the courts), and thus, is inarguably content based.

{¶ 98} It would be one thing if the majority sanctioned Bahan simply for her drunken, public outburst. Or if it said that her out-of-court conduct would be equally sanctionable whether her tirade was directed at a judge, a minister, a barber, a city councilperson, or a member of the public. In such a situation, the majority could plausibly maintain that the regulation it is enforcing is content neutral. But that's not what it holds. It holds that her conduct is sanctionable for violating Gov.Bar R. IV(2) precisely because it was directed at a judge. That's not a content-neutral regulation. And because it is not content neutral, it can pass constitutional muster only if it survives strict scrutiny. *Turner Broadcast Sys., Inc. v. Fed. Communications Comm.*, 512 U.S. 622, 641, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). The majority cannot—and doesn't even try—to make such a showing. Indeed, the very existence of Prof.Cond.R. 8.2(a) demonstrates that there are less restrictive means for the government to accomplish its legitimate interests here.

{¶ 99} Equally disquieting is the fact that the majority continues to justify its hyper-restrictive speech regulation on the need to "preserve public confidence in the legal system," majority opinion at ¶ 29; *see also Morton*, __ Ohio St.3d __, 2021-Ohio-4095, __ N.E.3d __, at ¶ 40 (O'Connor C.J., concurring) ("the integrity of the court is an essential cog in the democratic system"). The United States Supreme Court, however, has flatly rejected this rationale. As the Supreme Court has explained, "injury to official reputation is an insufficient reason 'for repressing speech that would otherwise be free.' " *Landmark Communications, Inc.*, 435 U.S. at 841-842, 98 S.Ct. 1535, 56 L.Ed.2d 1, quoting *Sullivan*, 376 U.S. at 272-273, 84 S.Ct. 710, 11 L.Ed.2d 686. And "the institutional reputation of the courts is entitled to no greater weight in the constitutional scales." *Id*. at 842. Instead, "[t]he premise of the First Amendment is that the American people are neither sheep nor fools, and hence fully capable of considering both the substance of the speech presented to them and its proximate and ultimate source." *McConnell v. Fed. Election Comm.*, 540 U.S. 93, 258-259, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) (Scalia, J., concurring in part and dissenting in part).

{¶ 100} Not only is the reputation-protecting speech restriction endorsed by the majority today constitutionally infirm, the restriction is also counterproductive. As the U.S. Supreme Court has cautioned:

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. For it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions. And an enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.

(Footnote omitted.)  *Bridges*, 314 U.S. at 270-271, 62 S.Ct. 190, 86 L.Ed. 192.

{¶ 101} The majority's view is that the First Amendment only "may be invoked as a defense for permissible criticism."  Majority opinion at ¶ 34.  News flash.  That's not the way the First Amendment works.  The First Amendment guarantees citizens permission to criticize their government; it doesn't grant government the right to decide what criticism is permissible.

{¶ 102} None of this is to defend Bahan's conduct.  By all accounts, her behavior at the holiday party was boorish, unprofessional, and embarrassing to herself and others.  No doubt, regardless of any discipline that this court imposes, behavior of this sort has its own consequences.  It's a fairly safe bet that Bahan's outburst did serious damage to her reputation among the lawyers and judges who were in attendance—damage that one may assume will have financial consequences to her and her practice.  And there is a case to be made that independent of the communicative aspects of her drunken tirade, Bahan could have been disciplined for violating Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).  But for whatever reason, the three-member panel of the Board of Professional Conduct that heard Bahan's case chose to dismiss those alleged violations, and we cannot impose discipline on any charge that a panel has unanimously dismissed.  *See* Gov.Bar R. V(12)(G) (when a unanimous hearing panel finds that the evidence is insufficient to support a charge or count of misconduct, the panel may order on the record or in its report that the complaint or count be dismissed).

{¶ 103} The bottom line, though, is that it doesn't matter what one thinks of Bahan's conduct. Under our own rules and established First Amendment jurisprudence, the majority does not have the authority to discipline Bahan under Gov.Bar R. IV(2) for her holiday-party outburst. It should have dismissed that charge.

### *The chilling effect of the majority's opinion*

{¶ 104} One might ask, "What's the big deal?" Bahan's behavior at the holiday party was outlandish, so why does it matter if the majority stretches the rules to discipline her?

{¶ 105} One obvious answer is that as judges, we are bound to apply the law and to follow the Ohio and United States Constitutions. We hardly engender respect for the rule of law if we ignore United States Supreme Court precedent and overlook constitutional limitations on our authority when it comes to punishing our critics.

{¶ 106} The other problem is that the majority's opinion will almost certainly have a chilling effect on legitimate attorney criticism of the judiciary. Just over four months ago, this court issued its decision in *Morton*, __ Ohio St.3d __, 2021-Ohio-4095, __ N.E.3d __, and suspended an attorney from the practice of law for criticizing this court in a court filing even though nothing that the attorney said was shown to be untrue. Today, this court goes a step further and says that even out-of-court speech is subject to punishment when it is disrespectful of the judiciary.

{¶ 107} The majority attempts to hide from the broad rule it writes. It suggests that because Bahan used "choice expletives" to describe Judge Goslee, its opinion will not have a chilling effect on legitimate attorney speech. Majority opinion at ¶ 33. Bahan's conduct was certainly appalling. But the problem is that rule that the majority writes isn't cabined to situations like Bahan's; it applies to any criticism of the judiciary that is deemed disrespectful. The message to attorneys is clear—criticize this court or any judge at your own peril. That message may not have much impact on attorneys like Bahan, but it is likely to be heard loudly and clearly by others who are more cautious. Why risk one's livelihood by getting anywhere close to the line of saying something about the judiciary that someone might consider disrespectful?

{¶ 108} "[S]peech critical of the exercise of the State's power lies at the very center of the First Amendment." *Gentile v. Nevada State Bar*, 501 U.S. 1030, 1034, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Our nation's conception of free speech is premised on the idea that citizens will serve as a check on public officials, including judges. Indeed, "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark Communications, Inc.*, 435 U.S. at 839, 98 S.Ct. 1535, 56 L.Ed.2d 1. But in establishing a rule that makes "disrespectful" speech sanctionable, the majority removes from public debate even legitimate attorney criticism of the judiciary.

{¶ 109} As I explained in *Morton*:

Stifling attorney criticism comes at a high cost. Attorneys, by virtue of their education, training, and experience with the judicial branch, are in the best position to "recognize, understand, and articulate problems with the judiciary" and "to comment on the judiciary and judicial qualifications." Tarkington, *The Truth Be Damned: The First Amendment, Attorney Speech, and Judicial Reputation*, 97 Geo.L.J. 1567, 1601 [2009]. This is precisely the information that the public needs "to make informed decisions about the judiciary, to fulfill the self-governing role, and check judicial abuses." *Id.*

Today's decision will make attorneys hesitant to assert opinions critical of the court. Not just attorneys like Morton whose assertions some may consider outlandish, but also the more cautious and the more insightful. By chilling attorney criticism of the judiciary, we "forestall[] the public's access to the thoughts of the very class of people in daily contact with the judicial system" and "shield the judiciary" from those best situated "to advance

knowledgeable criticism." [*State ex rel. Oklahoma Bar Assn. v.*] *Porter*, 766 P.2d [958,] 968 [(Okla.1988)].

(Second set of brackets added in *Morton*.) __ Ohio St.3d __, 2021-Ohio-4095, __ N.E.3d __, at ¶ 104-105 (DeWine, J., dissenting).

{¶ 110} Today, the majority follows up on *Morton* with yet another warning to attorneys to watch what they say when it comes to talking about judges; when it comes to speech directed at the judiciary, basic principles of free speech do not apply. This is not good for self-government.

### *Conclusion*

{¶ 111} In holding that attorneys are now subject to discipline under Gov.Bar R. IV(2) for directing disrespectful speech at a judge, the majority cites the oath that Ohio lawyers take to conduct themselves "with dignity and civility and show respect towards judges." Majority opinion at ¶ 28. But as judges, we also take an oath. And by that oath, we promise "to support the constitution of the United States and the constitution of this state." R.C. 3.23. Hence, I cannot join the majority in its holding that an attorney's speech is subject to discipline under Gov.Bar R. IV(2) simply because it is disrespectful to a member of the judiciary.

{¶ 112} Because I believe that Bahan's violations of Prof.Cond.R. 8.4(h) by themselves warrant the sanction imposed by the majority, I concur in its judgment. But because I believe there is no basis to sanction Bahan under Gov.Bar R. IV(2), I concur in judgment only.

KENNEDY, J., concurs in the foregoing opinion.

_____

Briscoe Law Offices and Collen H. Briscoe; Dinsmore & Shohl, L.L.P., and Nita Hanson; and Kent R. Markus, Bar Counsel, and Thomas E. Zani, Deputy Bar Counsel, for relator.

The Steinhelfer Firm, L.L.C., and Tim Steinhelfer, for respondent.

January Term, 2022

_____