**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Avery*, **Slip Opinion No. 2026-Ohio-2065.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2065

DISCIPLINARY COUNSEL *v*. AVERY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Avery*, Slip Opinion No. 2026-Ohio-2065.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Respondent's objections overruled—Public reprimand.*

(No. 2025-1635—Submitted March 24, 2026—Decided June 5, 2026.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-040.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, CALABRESE, DETERS, HAWKINS, and SHANAHAN, JJ. DEENA R. CALABRESE, J., of the Eighth District Court of Appeals, sat for BRUNNER, J.

**Per Curiam.**

{¶ 1} Respondent, Darin Lynn Avery, of Mansfield, Ohio, Attorney Registration No. 0085528, was admitted to the practice of law in Ohio in 2009.

{¶ 2} In a December 2024 complaint, relator, disciplinary counsel, alleged that Avery violated four professional-conduct rules while serving as court-appointed counsel representing a client in the direct appeal of convictions for various felonies, including aggravated murder, for which the client was sentenced to life in prison without the possibility of parole. Relator alleged that Avery failed to review significant portions of the trial record, prioritized other work over the client's case, failed to inform the client of important developments and limitations, and raised his own ineffectiveness as appellate counsel, unnecessarily delaying the client's appeal.

{¶ 3} The parties entered into stipulations of fact and submitted 22 joint exhibits, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. Based on the parties' stipulations and the evidence presented—including the testimony of Avery and two other witnesses, four exhibits submitted by Avery, and 11 additional exhibits jointly submitted by the parties after the hearing—the panel found that Avery committed three of the alleged rule violations but it unanimously dismissed the fourth, an alleged violation of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), finding that it had not been proved by clear and convincing evidence.

{¶ 4} The panel recommended that Avery be publicly reprimanded for his misconduct. The board adopted the findings of fact, conclusions of law, and recommendation of the panel and further recommends that Avery be ordered to pay the costs of these proceedings.

{¶ 5} Avery raises three objections to the board's report and recommendation, challenging a single factual finding, the board's finding that his

conduct was prejudicial to the administration of justice, and the board's recommendation that he be ordered to pay the costs of these disciplinary proceedings. For the reasons explained below, we overrule each of Avery's objections, adopt the board's findings of misconduct, publicly reprimand Avery for his misconduct, and order him to pay the costs of these disciplinary proceedings.

## I. THE BOARD'S FINDINGS OF FACT

{¶ 6} On November 18, 2022, the Richland County Court of Common Pleas appointed Avery to serve as appellate counsel for John Mack. Two days earlier, a jury had found Mack guilty of two counts of aggravated murder, two counts of murder, two counts of kidnapping, six counts of tampering with evidence, one count of abduction, one count of theft of a motor vehicle, one count of gross abuse of a corpse, one count of domestic violence, and one count of obstructing official business. *See State v. Mack*, Richland C.P. No. 2021CR0221 R. Those charges related to the death of Mack's ex-girlfriend, who was found deceased in the trunk of her car on March 14, 2021. *See State v. Mack*, 2025-Ohio-4812, ¶ 2 (5th Dist.). Mack was sentenced to life in prison without the possibility of parole.

{¶ 7} On December 16, 2022, Avery filed a notice of appeal in the Fifth District Court of Appeals. *See State v. Mack*, Richland App. No. 2022 CA 0083. During a telephone conversation three days later, Avery informed Mack that he had filed the notice of appeal, that he had been in contact with Mack's trial counsel, and that the court reporter expected the trial transcript to be around 4,000 pages. Avery and Mack also discussed a potential argument alleging ineffective assistance of trial counsel, and they talked about the possibility of meeting in person to discuss the appeal.

{¶ 8} During a follow-up phone call on January 23, 2023, Avery and Mack discussed the status of the transcript, which was not yet complete, and several potential arguments for appeal, spoliation of evidence, issues concerning the crime-

scene log, speedy-trial issues, and the suppression of evidence. They also agreed to meet in person before Avery filed the appellate brief.

{¶ 9} Avery, a sole practitioner, had multiple discussions with Mack's trial counsel about the issues in Mack's case and the tremendous size of the record. On February 2, Avery filed a motion asking the court of appeals to preapprove extraordinary fees and clarify how many extensions of time he could request for the filing of Mack's brief. In that motion, Avery explained that the court had denied his applications for extraordinary fees in two other cases over the previous two years and that he did "not desire to invest the time that [would] be necessary to adequately represent [Mack] without certainty of payment."

{¶ 10} The court of appeals denied Avery's motion in a March 3 entry, stating that it could not predetermine what fees would be approved or how many extensions would be granted. In its entry, the court noted that "'counsel who accepts appointment as court-appointed attorneys impliedly accepts the fee schedule approved by the county commissioners and are bound by that schedule.'" *State v. Mack*, No. 22CA83, 1 (5th Dist. Mar. 3, 2023), quoting *In re M.S.*, 2022-Ohio-1843, ¶ 27 (8th Dist.). "If [Avery] is not comfortable continuing this appointment," the court added, "he may file a motion to withdraw on or before March 17, 2023." *Id.* Avery did not withdraw from the case.

{¶ 11} Meanwhile, on February 13, Mack phoned Avery and they discussed Avery's review of the docket to that point and several potential issues for appeal. Avery stated he had several cases to wrap up before he turned his focus to Mack's case. At the conclusion of the call, Mack told Avery that he would call back in about two weeks. They did not speak again—let alone meet in person as they had planned—before Avery filed the appellate brief in July 2023. At his disciplinary hearing, Avery testified that he rarely conducted in-person visits in criminal appeals due to the time commitment and he explained that he did not believe that spending four hours on the road would have been an efficient use of his time.

{¶ 12} Mack's appellate brief was originally due on March 22, 2023. However, between March and June 2023, Avery filed five motions requesting extensions of time. He did not inform Mack of those requests. The court of appeals granted all five extensions despite the fact that its order granting the third extension stated, "NO FURTHER EXTENSIONS." (Capitalization in original.) The last of those extensions gave Avery until July 2, 2023, to file Mack's brief and stated for a second time that no further extensions would be granted. But Avery did not file the brief or seek another extension by that deadline. Instead, on July 7, he filed a "motion to file brief instanter," which the court granted on July 13.

{¶ 13} In that brief, Avery raised four assignments of error. The first three alleged that trial court had erred in denying Mack's motion to dismiss the case on speedy-trial grounds, overruling Mack's motion to suppress evidence, and allowing inadmissible hearsay into evidence. As the fourth assignment of error, Avery argued that he had provided ineffective assistance as Mack's appellate counsel. The primary arguments in support of that assignment of error were that the record in Mack's case was exceptional for its size and that the court of appeals' refusal to preapprove Avery's request for extraordinary fees and specify the number of extensions of time he would receive to file a brief left him "no choice but to continue to accept other work to the exclusion of his ability to work on [Mack's case] exclusively for any significant time." Avery stated that "[a]s a consequence, he did not review significant portions of the record or very significant portions of the evidence that was admitted at trial" and that he "therefore [could] not help but opine that he probably missed several valuable and possibly meritorious assignments of error." Avery added that he did not know whether his failure to review the entire record constituted ineffective assistance of appellate counsel.

{¶ 14} Avery never told Mack that he could not adequately represent him due to financial considerations. Nor did he inform Mack that he was filing an incomplete brief. Moreover, Avery did not send Mack a copy of the brief until

Mack informed him in early September 2023—three months after he filed it in the court of appeals—that he had not received a copy. At Avery's disciplinary hearing, Mack testified that he had expected to meet with Avery to discuss his case in person and that he was "caught off guard" when he received a copy of the brief that had been filed without his input.

{¶ 15} On September 1, the State filed a motion to strike the brief Avery had filed, to remove him as appellate counsel, and to set a new briefing schedule. The State argued that Avery had violated professional-conduct rules by admitting that he had failed to review the entire record in Mack's case, by opining that he had "probably missed several valuable and meritorious assignments of error," and by raising his own ineffective assistance in Mack's brief. Avery responded to the State's motion, arguing that attorney-discipline matters are committed to the exclusive and original jurisdiction of this court and that given the size and complexity of the record, any counsel appointed to replace him "would face the same problem" he had faced. The court of appeals denied the State's motion.

{¶ 16} In October 2023, the State filed its brief and Avery filed a reply brief and a second application for extraordinary fees, seeking cumulative fees of $8,449. The court of appeals denied that application on the ground that it was prematurely filed.

{¶ 17} The court of appeals heard oral argument on January 4, 2024, at which time the State renewed its motion to remove Avery from the case. On January 11, the court granted that motion, removed Avery as counsel, struck all briefs that had been filed in the case, and—by separate entry—appointed the Office of the Ohio Public Defender ("OPD") to represent Mack going forward. Mack authorized Avery to challenge that ruling in this court by appealing it and by filing an extraordinary-writ action. We declined to exercise our jurisdiction over the appeal, *State v. Mack*, 2024-Ohio-1228, and granted the respondents' motion to

6

dismiss the petition for a writ of mandamus and/or prohibition, *State ex rel. Mack v. Hoffman*, 2024-Ohio-3227.

{¶ 18} On January 24, 2024, Avery filed a third and final motion for extraordinary fees, seeking $10,171 for representing Mack in the direct appeal of his convictions. The court of appeals denied that motion, stating, "Implicit in accepting an appointment is an agreement to do the required work. By not withdrawing, [Avery] has delayed consideration of [Mack's] case because the case has to be briefed again." *State v. Mack*, Richland App. No. 22CA83, 1-2 (Apr. 15, 2024). The court approved just $686 in fees based on the work Avery performed from November 22, 2022, to March 17, 2023—the deadline the court had imposed for Avery to withdraw from the case if he was not comfortable continuing to represent Mack. The court found that any work performed after that date was unreasonable because it did not benefit Mack or the court. Avery appealed that judgment to this court, but we declined to exercise our jurisdiction. *State v. Mack*, 2024-Ohio-4501.

## II. THE BOARD'S FINDINGS OF MISCONDUCT

{¶ 19} The board found by clear and convincing evidence that Avery violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished) and 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter). It also found by clear and convincing evidence that Avery violated 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) in two respects—namely, by filing Mack's appellate brief late and by asserting in that brief that he had provided ineffective assistance of counsel.

{¶ 20} With respect to the Prof.Cond.R. 1.4(a) violations, the board found that Avery "had an obligation to consult with Mack on the merits of the brief" and that he "had a duty to keep Mack informed about the status of the brief and the

appeal in general." In the early days of the representation, Avery and Mack discussed several arguments that should be raised in the appeal and they agreed to meet in person before the brief was filed. While the board acknowledged that it can be difficult to communicate with incarcerated clients, it noted that the record included no evidence showing that Avery made any attempt to communicate with Mack—whether by phone, letter, or in person—during a period of nearly seven months. During that period, Avery requested and obtained five extensions of time to file Mack's brief, but he never informed Mack of the delay. Avery never met with Mack, did not consult with him about his alleged ineffective assistance as appellate counsel, and did not even send Mack a copy of the brief until Mack informed him that he had not received a copy nearly three months after it was filed.

{¶ 21} With respect to the violation of Prof.Cond.R. 8.4(d), the board found that after requesting and receiving five extensions of time to prepare and file Mack's brief, Avery failed to meet the July 2, 2023 deadline and the court of appeals allowed him to file the brief on July 7—five days late and 127 days after he received the record. The board determined that Avery, believing that no further extensions would be granted, thereby risked losing his opportunity to present any arguments on appeal if the court struck the brief as untimely filed.

{¶ 22} The board rejected Avery's argument that the court of appeals had the option to grant relief on one or more of his first three assignments of error without reaching the fourth (alleging ineffective assistance of counsel). Instead, the board found that the fourth assignment of error—which we note was asserted before completion of direct appeal, contrary to App.R. 26(B)—"created a conundrum for the Fifth District." *See* App.R. 26(B)(1) (allowing a criminal defendant to "apply for reopening of the appeal from the judgment of conviction and sentence . . . based on a claim of ineffective assistance of appellate counsel"). If the court denied Mack relief on the first three assignments of error, the board explained, the case would be subject to reopening under App.R. 26(B) based on

Avery's declaration that he may have provided ineffective assistance of counsel, which—like the court of appeals' decision to remove Avery as counsel—would have resulted in the duplication of his work.

{¶ 23} The board also rejected Avery's argument that the similarity of OPD's brief to his own demonstrated that his conduct had caused no harm to the administration of justice. While the board recognized that "it is likely that [Avery's] organization of the case file, pointing out the most relevant portions of the record, and work on his brief influenced and smoothed the path for OPD to prepare its own brief," it found that Avery's conduct "is to be judged when it took place, not in hindsight." Indeed, paragraph 19 of the Preamble to the Rules of Professional Conduct states, "The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question." And, as the board noted, Avery "could not have known when he filed his brief that, upon OPD's complete review of the record, there were no additional non-frivolous assignments of error."

{¶ 24} The board determined that when judged at the time it occurred, Avery's conduct—both in filing Mack's appellate brief late and asserting in that brief that he had provided ineffective assistance of counsel—was prejudicial to the administration of justice. But the board declined to find that Avery's failure to review the entire record in Mack's case was itself prejudicial to the administration of justice because Avery had consulted with trial counsel and Mack regarding the contents of the record and potential assignments of error and because it was clear from Avery's recitation of the facts in his brief that he had reviewed a significant portion of the record.

{¶ 25} While the board found that Avery violated the Rules of Professional Conduct, it expressed its view that he was not solely to blame for the delay in Mack's appeal. The board noted that Mack's case had been described as "'one of

the most complex litigation cases in the history of Richland County' "[1] and that it had taken *three* appointed attorneys an entire year to try the case. The board further questioned the reasonableness of assigning Mack's appeal to a single appellate attorney given that trial counsel Bernard Davis, an attorney with nearly 50 years of experience, had initially asked the trial court to assign the appeal to OPD, on the grounds that the case "could not be effectively handled by one appellate counsel and that the OPD had the resources to do it properly."

{¶ 26} Nevertheless, the board found that Avery "should have realized the enormity of the case early on." In making this finding, the board noted that Davis told Avery in November 2022 that Davis had "pretty much dropped everything else just to do this case alone" for a whole year, that Avery told Mack in December 2022 that the transcript alone would be around 4,000 pages, and that Avery acknowledged in his February 2023 extraordinary-fee application that Mack's case was "one of the most complex litigation cases in the history of Richland County." The board did acknowledge Avery's testimony that he felt compelled to continue representing Mack because of his unique experience in successfully arguing two of the proposed assignments of error—regarding the suppression of evidence and speedy-trial issues—in other recent cases. But the board concluded that Avery's best course of action would have been to withdraw from the case when he was given the opportunity to do so.

---

1. Mark Caudill, *Investigators Recount Challenges of John Mack Jr. Case*, Mansfield News Journal (Nov. 18, 2022), quoting Richland County Prosecutor Gary Bishop, available at https://www.mansfieldnewsjournal.com/story/news/2022/11/18/richland-county-sheriffs-office-holds-press-conference-on-mack-case/69655444007/ (accessed May 13, 2026) [https://perma.cc/8DBZ-U7UQ].

### III.  AVERY'S OBJECTIONS TO THE BOARD'S FINDINGS OF FACT AND MISCONDUCT

**A.  *The Factual Finding Avery Challenges Is Supported by the Record and Has No Bearing on the Outcome of this Case***

{¶ 27} As his first objection, Avery challenges the board's finding that it took three attorneys "an entire year to try" Mack's case.  In this one-sentence objection, Avery asserts that "the case took three attorneys approximately a year and a half at the trial level" in that Mack was arrested on March 4, 2021, and indicted on May 12, 2021, and his trial ended on November 16, 2022.

{¶ 28} Avery offers no citation to the record to establish the accuracy of the dates set forth in his objection.  Nor does he say when trial counsel was appointed to represent Mack or explain why the exact amount of time it took to try Mack's case is material to the issues at hand.  Regardless of whether it took trial counsel one year or one and a half years to try the case, the record plainly establishes that Mack's case was complex and that the record was exceptional in its size.  Because the difference between the board's finding and Avery's proposed finding has no bearing on the outcome of this case, we overrule Avery's first objection.

**B.  *Avery's Conduct Was Prejudicial to the Administration of Justice***

{¶ 29} As his second objection, Avery challenges the board's finding that his conduct was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

{¶ 30} Avery argues that he should not be found to have engaged in conduct prejudicial to the administration of justice when a "systematic problem" contributed to depriving Mack of effective assistance of appellate counsel.  While Avery points to the trial court's decision to ignore the request of experienced trial counsel to appoint OPD instead of saddling a single attorney with a "gargantuan case" and the court of appeals' purported refusal to grant further extensions of time, he ignores his own contributions to the problem, which include remaining on the case despite

his knowledge of the sheer volume of the record and the attendant time and financial constraints he faced as a solo practitioner, failing to request additional extensions of time from the court of appeals, and raising the issue of his own ineffectiveness in Mack's direct appeal.

{¶ 31} Avery contends that it was "incumbent" on him to raise his fourth assignment of error, which alleged his own ineffectiveness as appellate counsel, "regardless of the consequences." However, this court has recognized that "appellate counsel cannot realistically be expected to argue their own ineffectiveness." *State v. Hooks*, 2001-Ohio-150, ¶ 5, citing *State v. Lentz*, 1994-Ohio-532, ¶ 9; *State v. Cole*, 2 Ohio St.3d 112, 114, fn. 1 (1982) (citing with approval a trial-court decision concluding that "as counsel cannot realistically be expected to argue his own incompetence, *res judicata* does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief"). Instead, App.R. 26(B) provides a mechanism for a defendant in a criminal case to raise ineffective assistance of appellate counsel in an application for reopening *after* the court of appeals has issued its judgment in the direct appeal. "'The provisions of App.R. 26(B) were specifically designed to provide for a specialized type of postconviction process. The rule was designed to offer defendants a separate collateral opportunity to raise ineffective-appellate-counsel claims beyond the opportunities that exist through traditional motions for reconsideration and discretionary appeals to our court or the Supreme Court of the United States.'" *State v. Davis*, 2008-Ohio-4608, ¶ 20, quoting *Morgan v. Eads*, 2004-Ohio-6110, ¶ 8. Thus, contrary to Avery's argument, it was not incumbent on him to raise his own ineffectiveness as an assignment of error in Mack's direct appeal.

{¶ 32} As the board found, Avery's assignment of error raising his own ineffectiveness created a conundrum for the court of appeals. If the court did not

find any of Avery's other assignments of error to be meritorious, the court would have been left to evaluate his allegation that he had provided ineffective assistance of counsel. Regardless of how the court chose to proceed, the absence of the briefing required by App.R. 26(B)(2) (to identify the assignments of error that were missed by appellate counsel in the first instance and the prejudice resulting therefrom) would have caused additional delays. Left with no good options, the court of appeals chose to appoint new counsel to assist with the appeal. Although that option entailed a significant delay, it also gave Mack the opportunity to assert any newly identified assignments of error in his direct appeal—and outside the shadow of Avery's alleged ineffectiveness.

{¶ 33} Avery also claims that the board's report "implies that filing a brief late is prejudicial to the administration of justice." According to Avery, "oversights or delays of a few days occur from time-to-time without issue" and he prevented prejudice in Mack's case by requesting leave to file Mack's brief late. However, the board expressly found that Avery violated Prof.Cond.R. 8.4(d) by filing the brief late *and* by asserting in that brief that he had provided ineffective assistance of counsel. The board suggested that the untimely filed brief "could have" cost Mack the opportunity to present any arguments on appeal—though it acknowledged that that harm did not in fact come to pass.

{¶ 34} We have previously found filing delays to be prejudicial to the administration of justice even when, as in this case, those delays ultimately were excused by the court. For example, in *Disciplinary Counsel v. Ranke*, we found that an attorney engaged in conduct prejudicial to the administration of justice by failing to timely file a notice of appeal in a client's criminal case and deliberately misleading the client into believing that the notice had been filed—even though the client subsequently obtained new counsel and was granted a delayed appeal. 2024-Ohio-5491, ¶ 7, 9, 12-13.

{¶ 35} And in *Disciplinary Counsel v. Valenti*, 2021-Ohio-1373, we found that an attorney engaged in two instances of conduct prejudicial to the administration of justice related to late filings. In the first instance, Valenti missed the deadline for filing a client's appellate brief, and then after the court ordered her to file the brief or show cause why the appeal should not be dismissed for failure to prosecute, she inadvertently filed a draft rather than the final version of the brief. *Id*. at ¶ 4-7, 13-14. And in the second instance, Valenti failed to timely file a notice of appeal in another client's case. *Id*. at ¶ 8, 13-14. Like Avery's violation of Prof.Cond.R. 8.4(d), neither of Valenti's violations resulted in lasting harm to the client, as one court granted additional time for new counsel to file a brief and the other court granted a motion for delayed appeal. *Id*. at ¶ 6, 8. While Avery's filing of Mack's appellate brief several days late may not have been as egregious as the conduct at issue in *Ranke* or *Valenti*, we nonetheless find that that conduct combined with Avery's decision to prematurely raise his own ineffectiveness as appellate counsel created a significant delay—more than 230 days in all—that was prejudicial to the administration of justice.

{¶ 36} Based on the foregoing, we overrule Avery's second objection and adopt the board's findings that Avery's conduct violated Prof.Cond.R. 1.4(A)(2), 1.4(a)(3), and 8.4(d).

## IV. RECOMMENDED SANCTION

{¶ 37} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 38} The parties to this case did not stipulate to any aggravating or mitigating factors. Relator argued in its posthearing brief that two aggravating factors are present: a dishonest or selfish motive and multiple offenses. *See* Gov.Bar R. V(13)(B)(2) and (4).

**{¶ 39}** The board found just one aggravating factor. While it agreed that Avery had committed multiple offenses, it rejected relator's suggestion that Avery had acted with a dishonest or selfish motive, *see* Gov.Bar R. V(13)(B)(2); instead, it found that the absence of a dishonest or selfish motive was a mitigating factor*, see* Gov.Bar R. V(13)(C)(2). The board noted that it was Avery's honesty about his failure to review the entire record in Mack's case that brought this matter to light. The board also noted that although Avery initially informed the court of appeals that he needed certainty of payment greater than the standard $5,000 maximum fee for court-appointed counsel work, he proceeded to represent Mack and provided services in excess of the maximum fee without any guarantee that he would be paid for those services. While the board found that there was some evidence indicating that Avery's decision to take on other remunerative work may have limited the time he could dedicate to Mack's appeal, it also found evidence showing that appellate deadlines, page limits, and the sheer magnitude of the case limited Avery's effective representation of Mack as much as—if not more than—his financial concerns. The board also found that Avery's simply having more time would not have impacted the appeal, given that OPD had more time and significantly more resources than Avery yet identified the same issues that Avery had.

**{¶ 40}** In addition to the absence of a dishonest or selfish motive, the board found that four other mitigating factors are present. Specifically, Avery has no prior disciplinary record, made a good-faith effort to make restitution or rectify the consequences of his misconduct by assisting OPD to streamline its work on Mack's case following his removal, and made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1), (3), and (4). The board also found that other penalties or sanctions had been imposed for Avery's misconduct in that he was compensated only $686 of his $10,171 requested fee. *See* Gov.Bar R. V(13)(C)(6). The board found that

to be a "significant" "financial penalty" given that Avery filed his brief within 127 days of receiving the record, identified the same issues that OPD identified over a 219-day period using substantially greater resources, and—according to Mack—produced a brief that was "'a little more accurate' than OPD's brief." Board's report, ¶ 85, quoting transcript of disciplinary hearing.

{¶ 41} The parties did not offer any stipulation as to the appropriate sanction for the misconduct at issue in this case. In their posthearing briefs, relator proposed that Avery be publicly reprimanded while Avery appeared to suggest that no sanction is warranted.

{¶ 42} The board found that while Avery seriously misjudged his ability to manage Mack's case, he did not engage in any willful misconduct. The board also found that five factors weigh against imposing a suspension in this case: (1) Avery's brief was well-done, and he clearly devoted substantial time to fulfilling his obligations in representing Mack to the best of his ability under the circumstances; (2) Avery had communicated with Mack in advance about the assignments of error that were eventually included in his brief—with the exception of the claim of ineffective assistance of counsel; (3) Mack suffered no actual harm in that OPD's brief demonstrated that Avery had identified the relevant arguments; (4) the five mitigating factors present in this case outweighed the single aggravating factor; and (5) our precedent supports the imposition of a public reprimand.

{¶ 43} In recommending a public reprimand for Avery's misconduct, the board relied on four cases: *Columbus Bar Assn. v. Smith*, 2015-Ohio-2000; *Cleveland Metro. Bar Assn. v. Callahan*, 2017-Ohio-5700; *Columbus Bar Assn. v. Bhatt*, 2012-Ohio-4230; and *Disciplinary Counsel v. Smith*, 2016-Ohio-1584.

{¶ 44} In *Columbus Bar Assn. v. Smith*, we publicly reprimanded an attorney who neglected a client matter (by filing an untimely habeas corpus petition that failed to present all of the client's claims), failed to reasonably communicate with the client about the means by which the client's objectives were to be

accomplished, failed to comply as soon as practicable with the client's reasonable requests for information, and failed to take reasonably practicable steps to protect the client's interests upon the attorney's withdrawal from representation. No aggravating factors were present in that case, *Columbus Bar Assn. v. Smith* at ¶ 8, compared to the one aggravating factor of multiple offenses in this case. And we attributed mitigating effect to Smith's clean disciplinary record, the absence of a dishonest or selfish motive, her cooperation in the disciplinary proceedings, evidence of her good character and reputation, her acceptance of full responsibility before the complaint was filed, and the absence of harm to her clients. *Id*.

**{¶ 45}** In *Callahan*, we publicly reprimanded an attorney who had minimal contact with a personal-injury client before submitting a demand package on the client's behalf and failed to file a lawsuit before the statute of limitations expired on the client's claim. Callahan then attempted to settle the client's potential malpractice action against him without notifying the client in writing that she should consult with independent counsel before settling the claim. Callahan also waited until the day before the statute of limitations would have expired to file a claim on behalf of the client's child, who had been a minor at the time of the accident, failed to attend a scheduled pretrial conference on the client's behalf, and initially failed to comply with a court order to withdraw from the case.

**{¶ 46}** No aggravating factors were present in *Callahan*. 2017-Ohio-5700 at ¶ 9. Like Avery, Callahan had a clean disciplinary record, lacked a selfish or dishonest motive, made a timely, good-faith effort to rectify the consequences of the misconduct, and fully cooperated in the ensuing disciplinary proceedings. *See id*. at ¶ 9. Although, unlike here, other sanctions had not been imposed for the misconduct, we found that there was no lasting harm to any of Callahan's clients and that he had acquired and begun using law-practice-management software to prevent similar misconduct going forward. *See id*.

**{¶ 47}** In *Bhatt*, 2012-Ohio-4230, we publicly reprimanded an attorney who neglected two client matters, resulting in the dismissal of a child-custody case, failed to keep his clients reasonably informed about the status of their matters, and failed to inform them that his professional-liability insurance had lapsed for several months while representing them. No aggravating factors and five mitigating factors were present—namely, Bhatt's clean disciplinary record, the absence of a selfish or dishonest motive, his cooperation in the disciplinary proceedings, his acknowledgment of wrongdoing, and evidence of his good character and reputation. *Id*. at ¶ 17.

**{¶ 48}** And lastly, in *Disciplinary Counsel v. Smith*, 2016-Ohio-1584, we publicly reprimanded an attorney who engaged in conduct prejudicial to the administration of justice, among other violations, after finding that she failed to attend a scheduled custody hearing, knowingly failed to comply with court-ordered conditions regarding her withdrawal from the representation, failed to protect the client's interests on withdrawal, and initially failed to cooperate in the ensuing disciplinary investigation. In addition to the multiple-offenses factor, which is present in this case, Smith's initial failure to cooperate in the ensuing disciplinary investigation was found to be an aggravating factor. *See id*. at ¶ 9. Mitigating factors consisted of Smith's clean disciplinary record, the absence of a dishonest or selfish motive, her eventual full cooperation in the disciplinary proceedings, and evidence of her good character and reputation. *Id*.

**{¶ 49}** Here, recognizing that we imposed public reprimands in the presence of no aggravating factors and multiple mitigating factors in *Columbus Bar Assn. v. Smith*, *Callahan*, and *Bhatt* and in the presence of two aggravating factors and multiple mitigating factors in *Disciplinary Counsel v. Smith*, the board concluded that the presence of a single aggravating factor and five mitigating factors in this case did not justify a harsher sanction. Finding that the facts of this case suggest that Avery is a zealous advocate for his clients and takes the duty of

candor seriously, the board declined to find that the public needs protection from him or that the public would be served by our suspending him. Citing the absence of a particularized showing of bad faith, the board recommends that Avery be publicly reprimanded for his misconduct and that he be ordered to pay the costs of these disciplinary proceedings. After a thorough review of the facts and our applicable precedent, we agree that a public reprimand is the appropriate sanction for Avery's misconduct.

## V. AVERY'S FINAL OBJECTION

**{¶ 50}** Avery objects not to the board's recommendation that he be publicly reprimanded for the misconduct found above but to its recommendation that he be ordered to pay the costs of these proceedings. In support of that objection, he notes that he has already suffered a significant financial penalty in that he received only $686 for more than 145 hours of work, for which he sought payment of more than $10,000 at the court-appointed rate of just $70 an hour. He argues that the costs of these disciplinary proceedings, which according to the statement submitted by the board exceed $1,200, "completely swallow the paltry fees [that he] actually received" for representing Mack.

**{¶ 51}** Avery cites no authority to support his position that he should not be required to pay the necessary costs and expenses of these disciplinary proceedings, nor does he appear to appreciate that those costs and expenses were incurred as a direct result of his own misconduct. As a general rule, the costs of disciplinary proceedings are taxed to the disciplined attorney even when alleged rule violations are dismissed, *see, e.g.*, *Columbus Bar Assn. v. Ryan*, 2024-Ohio-5570, ¶ 3, 30 (taxing costs to the disciplined attorney even though multiple alleged rule violations were unanimously dismissed by the panel), unless the entire complaint is dismissed for reasons other than the attorney's resignation with disciplinary action pending, *see, e.g.*, *Disciplinary Counsel v. Rudduck*, 2026-Ohio-1126, ¶ 84; *Disciplinary Counsel v. Mancino*, 2018-Ohio-3017, ¶ 4, 12; *Toledo Bar Assn. v. Rust*, 2010-

19

Ohio-170, ¶ 46; *compare Disciplinary Counsel v. Leonard*, 2017-Ohio-9005 (taxing costs to attorney who resigned from the practice of law with disciplinary action pending).

{¶ 52} This court has declined on just one occasion to tax the full amount of the necessary expenses incurred by the board in a case in which we disciplined an attorney. In *Akron Bar Assn. v. Shenise*, we acknowledged that the board had dismissed eight of the 17 alleged rule violations, and we had dismissed one more. 2015-Ohio-1548, ¶ 26. On those facts, we found that just $4,000 of the $9,571.08 in expenses incurred by the board in connection with those proceedings should be taxed to the disciplined attorney. *Id.*

{¶ 53} In contrast, in *Columbus Bar Assn. v. Bahan*, we declined to reduce the $3,143.05 in costs incurred by the board after the relator withdrew one count of its complaint, the panel dismissed an additional count, and the attorney was found to have committed just one of the two alleged rule violations charged in each of the two remaining counts. 2022-Ohio-1210, ¶ 60. In that case, we stated, "While the costs incurred in connection with this proceeding may be on the higher side of normal for the number of violations that we have found, we do not find that they are so out of line as to warrant a reduction." *Id.*

{¶ 54} In this case, the board filed a statement under Gov.Bar R. V(12)(K) demonstrating that it had incurred $1,205.80 in necessary costs and expenses in connection with these proceedings—$854 of which represents the expense for the court reporter to attend and transcribe the disciplinary hearing. Avery has been found to have committed three of the four alleged rule violations. On these facts, we find that there is no justification for a reduction or waiver of the costs incurred in the prosecution of these disciplinary proceedings. Consequently, we overrule Avery's third objection to the board's report.

## VI. CONCLUSION

{¶ 55} Accordingly, Darin Lynn Avery is publicly reprimanded for the misconduct described above. Costs are taxed to Avery.

Judgment accordingly.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai and Jay R. Wampler, Assistant Disciplinary Counsel, for relator.

Darin Lynn Avery, pro se.

_____